FILED
JAMES BONINI
CLERK

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

2009 DEC 22  P 3: 37

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | | |
|---|---|---|
| National Benefit Programs, Inc. | : | |
| 1650 West Fifth Avenue | : | |
| Columbus, Ohio 43212, | : | Case No. **2:09** CV **1156** |
| | : | |
| Plaintiff, | : | Judge **JUDGE SMITH** |
| | : | |
| v. | : | Magistrate Judge **MAGISTRATE JUDGE KEMP** |
| | : | |
| Express Scripts, Inc. | : | **JURY DEMAND** |
| c/o Corporation Service Company, | : | **ENDORSED HEREON** |
| Statutory Agent | : | |
| 50 West Broad Street | : | |
| Columbus, Ohio 43215, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

This Complaint arises out of defendant Express Scripts, Inc.'s failure to pay plaintiff nearly $3,000,000 in fees earned by plaintiff in connection with a business relationship. In particular, plaintiff originated tens of millions of dollars in business for Express Scripts, and Express Scripts agreed to pay plaintiff fees for its assistance in marketing and developing business for Express Scripts. Although defendant has set aside the nearly $3,000,000 it owes plaintiff, it stubbornly refuses to release these funds. Plaintiff seeks compensatory damages, interest on the money it is owed, and reimbursement of the costs it incurs for regrettably being forced to prosecute this action.

### THE PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, National Benefit Programs, Inc. (hereinafter referred to as "plaintiff" or "NBP"), is an Ohio corporation headquartered in Columbus, Ohio. Joe Concheck is

the sole shareholder and President of NBP. NBP provides, among other services, insurance and benefit programs to clients.

      2.     Defendant, Express Scripts, Inc. (hereinafter referred to as "defendant" or "ESI"), is a Delaware corporation headquartered in St. Louis, Missouri. ESI has engaged in the business of providing, managing and administering prescription drug programs for large corporate clients and their employees for years. ESI's prescription drug program serves tens of millions of consumers nationwide. ESI is a publicly traded company.

      3.     Jurisdiction over defendant ESI is proper because ESI conducts substantial business in Ohio, ESI's prescription drug program includes tens of thousands of Ohio consumers, and ESI directed systematic and purposeful contacts to Ohio in connection with its business relationship with NBP. Jurisdiction is further proper in this Court because the parties are residents of different states, and the amount in controversy far exceeds $75,000.

      4.     Venue is proper in this Court because NBP is located in this Judicial District, and this lawsuit arises out of acts or events that occurred, at least in part, in this Judicial District.

## BACKGROUND ALLEGATIONS

      5.     Defendant ESI solicits business from large corporate clients in connection with its prescription drug programs. In particular, ESI provides, manages, and administers prescription drug programs for consumers throughout the United States. ESI targets large corporations in order to attract their employees and thus increase the number of consumers that enroll in their prescription drug program. ESI is then paid fees on the prescription drug claims submitted by the employees that enroll in the program. ESI also charges fees for other services and certain specialty programs provided by ESI.

6.      Each corporate client is an enormous source of potential consumers and thus revenue for ESI. As a result, ESI's sales activities are designed to solicit, secure and maintain large corporate clients with large numbers of employees. On e large corporate client could translate into tens or hundreds of thousands of consumers enrolling into ESI's prescription drug program. Once the client has agreed to use ESI's programs and services, ESI enters into a Prescription Drug Program Agreement with the client that defines the terms and conditions of the program and the fees ESI will receive for providing, managing, and administering the program.

7.      In late 2003, ESI asked NBP and its President, Joe Concheck, to assist ESI in identifying, retaining, maintaining and securing large corporate clients for ESI's prescription drug benefit programs. ESI agreed to compensate NBP for NBP's efforts to market and develop business for ESI.

8.      The parties agreed that the compensation would be paid by ESI -- not the client – and that the compensation would be paid out of ESI's general assets. The compensation is based, in part, on the number of Rx claims generated from the consumers NBP originates for ESI.

9.      As a result and in reliance upon ESI's commitment, NBP began identifying and approaching clients about utilizing ESI's programs. NBP spent substantial time and resources contacting prospective clients for ESI as a result of its agreement with ESI.

10.      In late 2003 and early 2004, NBP secured a number of substantial clients for ESI, and this has generated and likely will continue to generate tens of millions of dollars in revenue for ESI. Some of the clients NBP originated and retained for ESI include Abercrombie & Fitch, Antioch Company, Brunswick Corporation, Clinton County, Freshmark, Inc., Meadwestvaco., SMI-G6, Relizon, Reynolds & Reynolds and Stanley Steemer International.

11.     As a direct result of NBP's efforts on behalf of ESI, ESI has enrolled and maintained an enormous number of consumers into its prescription drug program, and ESI has made millions of dollars by virtue of the corporate clients NBP has generated and maintained for ESI. ESI has accounted for the fees it owes NBP but has refused to release the fees. Excluding interest, presently, ESI has accounted for $2,811,133.65 in fees owed to NBP.

12.     ESI was obligated to pay NBP its fees beginning at the end of the first quarter of 2004. ESI breached the parties' agreement by failing to pay any of the fees owed to NBP despite the fact that ESI earned revenue from clients originated by NBP for each quarter since early 2004. ESI first breached its agreement with NBP at the end of the first quarter of 2004 and continues to breach its agreement by failing to pay any of the fees owed to NBP which continue to accrue each quarter.

13.     In April 2006, NBP signed a contract setting forth the same terms as the oral agreement it made with ESI in 2003. The written contract was not effective until April 2006 when it was signed by NBP, and therefore, does not apply to the clients at issue in this lawsuit because ESI commenced business with the clients at issue in this lawsuit before April 2006.

14.     ESI has refused to pay NBP the amounts it owed to NBP claiming that the fees must be disclosed to ESI's clients. Such a requirement was never part of the agreement between ESI and NBP. Moreover, the clients originated by NBP do not pay the compensation owed by ESI. To the contrary, ESI agreed to compensate NBP out of ESI's general assets and ESI did not and does not add a commission or require the client to pay anything to NBP. Finally, the contracts between ESI and its clients each disclose that "ESI may pay a commission or other remuneration to a broker in connection with the Agreement [ . . .]" and that the "commission or other remuneration will be provided by ESI upon written request."

15.     ESI has wrongfully withheld the compensation it agreed to pay NBP for the origination of clients for ESI. These fees have been accounted for by ESI, and NBP seeks an Order requiring the release of the funds, plus interest on those funds.

## COUNT ONE – BREACH OF CONTRACT

16.     The allegations of the foregoing paragraphs are incorporated as if realleged hereunder.

17.     Plaintiff and defendant ESI entered into an oral contract in early 2004. ESI agreed to compensate NBP a fee for all clients NBP brought to ESI. ESI has continued to earn revenues and to withhold NBP's compensation since the first quarter of 2004.

18.     Plaintiff performed all of its obligation, and ESI set aside and accounted for the fees owed to NBP.

19.     ESI breached its contract by failing to compensate NBP.

20.     As a direct and proximate result of defendant's unlawful conduct, plaintiff has suffered and continues to suffer economic losses and seeks an Order requiring ESI to pay all fees owed to NBP, plus interest, fees, and costs.

## COUNT TWO – UNJUST ENRICHMENT

21.     The allegations of the foregoing paragraphs are incorporated as if realleged hereunder.

22.     Plaintiff conferred a benefit upon ESI by identifying and originating new business for ESI and maintaining and retaining existing business for ESI.

23.     ESI was and is aware of this benefit.

24.     It would be improper and unjust for ESI to retain the benefit bestowed on it by plaintiff under the circumstances of this case without paying the fees ESI promised to NBP.

- 5 -

25.     As a direct and proximate result of defendant's misrepresentation that NBP would be paid for the services and benefits it conferred upon ESI and its other unlawful conduct, plaintiff has suffered and continues to suffer economic losses and seeks an Order requiring ESI to pay all fees owed to NBP, plus interest, fees, and costs.

## COUNT THREE – PROMISSORY ESTOPPEL

26.     The allegations of the foregoing paragraphs are incorporated as if realleged hereunder.

27.     In late 2003, ESI made a clear and unambiguous promise to NBP and its President, Joe Concheck. that if NBP assisted ESI in identifying and securing large corporate clients for ESI, ESI would compensate NBP for NBP's efforts to market and develop business for ESI.

28.     NBP's decision to provide the marketing and business development to ESI was done in reliance upon ESI's commitment to pay to NBP fees. All of NBP's actions in furtherance on ESI's business were done only after and in reliance upon ESI's representations that it would pay fees to NBP.

29.     It was reasonable and foreseeable that NBP would act in reliance upon ESI's commitment to pay it fees and that NBP would spend substantial time and resources contacting prospective clients for ESI as a result of ESI's representations and promises made to NBP.

30.     ESI knew or should have reasonably known that NBP would act and was acting in reliance on its representation that if NBP identified and enrolled clients to use ESI's programs, NBP would be compensated for its services.

31.     The foregoing facts and circumstances created an implied or quasi-contractual obligation on the part of ESI to pay NBP the promised fees based on NBP's detrimental reliance on the promises made by ESI.

32.     NBP will not be adequately compensated for its justifiable reliance on ESI's promises unless ESI's promise to pay NBP fees is enforced.

33.     As a direct and proximate result of ESI's unlawful conduct and promises made to NBP, NBP sustained substantial damages after relying upon ESI's promises, and it has suffered contractual expectation damages in excess of $2,811,133.65, plus interest.  NBP cannot be made whole unless ESI's promise to pay NBP fees is enforced.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff requests that this Court enter judgment in its favor and against defendant ESI and award plaintiff compensatory damages in excess of $2,811,133.65, plus interest; award plaintiff reasonable attorneys' fees and the costs of this action; and award plaintiff such other and further relief as may be appropriate.

Respectfully submitted,

Rex H. Elliott            (0054054)
Charles H. Cooper, Jr.    (0037295)
John C. Camillus          (0077435)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio  43221
(614) 481-6000
(614) 481-6001 (Facsimile)

- 7 -

Anthony O. Calabrese III        (0068535)
The Calabrese Law Firm, LLC
2450 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114
(216) 771-6135
(216) 696-4902 (Facsimile)

Attorneys for Plaintiff
National Benefit Programs, Inc.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable under law.