```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

National Benefit Programs,      :
Inc.,                           :
                                :
        Plaintiff,               :
                                :
    v.                          :    Case No. 2:09-cv-1156
                                :
Express Scripts, Inc.,          :    JUDGE SMITH
                                :
        Defendant.              :

<u>OPINION AND ORDER</u>

This matter is before the Court on the motion of defendant Express Scripts, Inc. ("ESI") to transfer venue to the United States District Court for the Eastern District of Missouri. Plaintiff National Benefit Programs, Inc. ("NBP") filed a memorandum in opposition, and ESI filed a reply. For the following reasons, the Court will grant the motion to transfer.

I. <u>Background</u>

NBP is a corporation domiciled in Ohio whose principal place of business is Columbus, Ohio. ESI is a Delaware corporation that maintains its corporate headquarters in St. Louis, Missouri. Jurisdiction is predicated on 28 U.S.C. §1332(a)(1). NBP commenced this civil action on December 22, 2009, seeking to recover compensatory damages in excess of $2,811,133.65 exclusive of interest and costs.

NBP asserts three claims for relief. Count one alleges that the parties entered into an oral contract in early 2004 under which NBP agreed to assist ESI in identifying, retaining, maintaining, and securing large corporate clients for ESI's prescription drug benefit programs. In return, ESI agreed to compensate NBP based, in part, on the number of prescription claims generated from the consumers NBP originated for ESI. NBP

further alleges that it performed all of its obligations under the agreement, but that ESI breached this oral contract by failing to compensate it.  Counts two and three seek recovery from ESI under alternative theories of unjust enrichment and promissory estoppel, respectively.

ESI's transfer request is based primarily on a forum selection clause and choice of law provision contained in a letter agreement entitled "Client Consultant Agreement Between NBP, LLC and Express Scripts, Inc." (hereinafter referred to as "Letter Agreement"). The Letter Agreement is dated November 4, 2003.  William Keifer, a vice-president and general manager, signed the agreement on behalf of ESI.  Joe Concheck, the president and sole shareholder of NBP, did not sign the contract until April 4, 2006.  Paragraph 13 provides that any dispute concerning the Letter Agreement or the consultant's services shall be heard in the Circuit Court of St. Louis County, Missouri, or the United States District Court for the Eastern District of Missouri.  This paragraph also provides that the terms of the Letter Agreement are to be governed by Missouri law to the extent that federal law does not apply.

NBP does not dispute that the forum selection clause contained in the Letter Agreement it executed in 2006 is valid. It maintains, however, that the clause is irrelevant to the 2003 oral contract under which it brought this action.  In support of this argument, NBP relies on the opening paragraph of the Letter Agreement which states that the agreement will not be effective until the date both parties have signed.  ESI contends that the forum selection clause applies to NBP's claims regardless of the effective date of the Letter Agreement and that, in any event, a portion of the recovery NBP seeks relates to commissions that have accrued since April 4, 2006.  ESI also points out that when Mr. Kiefer signed the Letter Agreement on its behalf, he hand

wrote under his signature the words "effective 1/1/04." ESI contends that, as to the effective date of the Letter Agreement, the handwritten provision prevails over the typewritten language contained in the opening paragraph.

## II. 28 U.S.C. §1404(a)

Title 28, United States Code, Section 1404 permits a district court, in the interest of justice and for the convenience of parties and witnesses, to transfer a civil action to any other district or division where it may have been brought. 28 U.S.C. 1404(a). The threshold issue is whether this action might have been brought in the Eastern District of Missouri. See Hoffman v. Blaski, 363 U.S. 335, 343 (U.S. 1960)(power of district court to transfer action to another district depends upon whether transferee court was one in which action might have been brought). Three elements must be met to satisfy this requirement: (1) the United States District Court for the Eastern District of Missouri must have subject matter jurisdiction; (2) venue must be proper in that district; and (3) the defendant must be amenable to process emanating from that court. SKY Technology Partners, LLC v. Midwest Research Institute, 125 F.Supp.2d 286, 291 (S.D.Ohio 2000). That this action might have been brought in the Eastern District of Missouri is not disputed since there is complete diversity of citizenship, the matter in controversy exceeds $75,000, and the sole defendant resides there and is amenable to process. This threshold requirement having been satisfied, the Court must consider whether the private interests of the litigants and the public's interest in the administration of justice favor the requested transfer. Moses v. Business Card Exp., Inc., 929 F.2d 1131, 1137 (6th Cir.), cert. denied, 502 U.S. 821 (1991).

## III. Factors to be Considered

The general principles relating to a transfer of venue under

28 U.S.C. §1404(a) have been extensively discussed in various Court of Appeals and District Court decisions within the Sixth Circuit. The purposes of transferring a case from one federal district to another, where venue is proper in each, are to permit access to proof with greater ease, to allow witnesses to attend a trial, to enhance enforceability of any judgment rendered, and otherwise to permit a transfer when to do so would further the goal of a fair and efficient trial and remove any obstacles thereto. Holiday Rambler Corp. v. American Motors Corp., 254 F.Supp. 137 (W.D.Mich. 1966). Providing for a change of venue allows the Court to prevent unnecessary waste of time, energy and money and to protect witnesses and the public against unnecessary inconvenience and expense. Rowe v. Chrysler Corp., 520 F.Supp. 15 (E.D.Mich. 1981).

However, when balancing those various factors, the Court does not start with the assumption that the case should proceed in whichever forum is slightly more advantageous to the parties or the witnesses. Rather, it has long been held that the plaintiff's choice of a forum is entitled to considerable weight, and, consequently, the party moving for a change of venue ordinarily must demonstrate that the interests served by 28 U.S.C. §1404(a) clearly favor a change of venue. Sun Oil Co. v. Lederle, 199 F.2d 423 (6th Cir. 1952); International Union of Elec. Radio and Mach. Workers, CIO v. United Elec. Radio and Mach. Workers of America, 192 F.2d 847 (6th Cir. 1951); Nicol v. Koscinski, 188 F.2d 537, 537 (6th Cir. 1951); Central Inv. Corp. v. Mutual Leasing Associates, Inc., 523 F.Supp. 74 (S.D.Ohio 1981); see also U.S. v. Cinemark USA, Inc., 66 F.Supp.2d 881 (N.D.Ohio 1999).

The considerable deference given to the plaintiff's choice of forum may be inappropriate, however, when the parties have entered into a valid forum selection clause. See Jumara v. State

4

Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995). Under these circumstances, some courts have shifted the burden of proof to the party opposing transfer to show why that party should not be bound by the contractually chosen forum. Id.; Viron Int'l Corp. v. David Boland, Inc., 237 F.Supp.2d 812, 815 (W.D.Mich. 2002). Those courts regard such a clause as the manifestation of the parties' agreement as to the most proper forum. Id.

The Sixth Circuit Court of Appeals has yet to decide this issue in the context of a §1404(a) motion, and decisions over the years among the lower courts have been mixed. Beginning with Viron, however, "there is a discernable trend throughout the Circuit to shift the burden to the opponent of the forum-selection clause." Candela Mgt. Grp., Inc. v. Taco Maker, Inc., No. 2:08-CV-1138, 2010 WL 1253552 at *4 (S.D.Ohio March 31, 2010)(Sargus, J.)(citations omitted). This trend is reflected in several recent decisions by judges of this Court. See id.; Eqrsco, LLC v. Evans Garment Restoration, LLC, No. 2:09-CV-358, 2009 WL 3259423 at *5 (S.D.Ohio Oct. 8, 2009) (Marbley, J.); Mind-Peace, Inc. v. Pharmacon Int'l Inc., No. 2:06-CV-632, 2006 WL 2849811 at *2 (S.D.Ohio Oct. 2, 2006)(Watson, J.); Valpak of Cincinnati, Inc. v. Valpak Direct Marketing Systems, Inc., No. 1:05-CV-510, 2005 WL 3244321 at *3 (S.D.Ohio Nov. 30, 2005)(Beckwith, C.J.); AmerisourceBergen Drug Corp. v. Meijer, Inc., No. 2:05-CV-199, 2005 WL 1630843 at *4 (S.D.Ohio Jul. 8, 2005)(Holschuh, J.).

While the presence of a forum selection clause in a commercial contract is a significant factor in analyzing a §1404(a) motion, it is not dispositive. Wm. R. Hague, Inc. v. Sandburg, 468 F.Supp.2d 952, 963 (S.D.Ohio 2006). A court must consider the other relevant factors as well. Id. These include the private interests of the litigants, including their convenience and the convenience of potential witnesses, as well

5

as the public's interest in the administration of justice, including systemic integrity and fairness.  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988).  The Court may also take into account other factors, including which party is more easily able to bear the hardship involved in litigating in a distant forum, Garrett v. Ruth Originals Corp., 456 F.Supp. 376 (S.D.Ohio 1978), where the conduct underlying the plaintiff's claims occurred, the comparative docket congestion in the districts under consideration, and the plaintiff's connection, if any, with the proposed transferee forum.  See Nicol v. Koscinski, supra; Artisan Development v. Mountain States Development Corp., 402 F.Supp. 1312 (S.D.Ohio 1975).  The instant motion for a change of venue will be decided with reference to these principles.

## IV. Applicability of Forum Selection Clause

Before weighing the factors necessary for deciding a §1404(a) transfer request, the Court must first determine whether the forum selection clause is applicable to NBP's claims in this case.  If the substance of these claims does not fall within the scope of the Letter Agreement, the forum selection clause will not apply.  See Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1361 (2d Cir.), cert. denied, 510 U.S. 945 (1993).  Public policy, however, calls for a broad reading of forum selection clauses.  Travelers Prop. Cas. Co. of America v. Centimark Corp., No. 2:04-cv-916, 2005 WL 1038842 at *2 (S.D.Ohio May 3, 2005). "Thus, even where a forum selection clause does not explicitly govern a given cause of action, courts will inquire into whether the other claims are sufficiently related to the claim that is specifically covered by the clause."  Id.

The clause at issue provides that "any dispute concerning this Letter Agreement or any of Client Consultant's services shall be heard in the Circuit Court of St. Louis County,

Missouri, or the Federal District Court for the Eastern District of Missouri, except that ESI may file suit in any jurisdiction in which Client Consultant resides or is doing business." Letter Agreement ¶13. The word "any" is all-inclusive language attesting to the parties' understanding that all disputes relating to their business relationship would be governed by the forum selection clause. See Travelers, supra. The word "concerning" is defined in the Oxford English Dictionary as "regarding, touching, in reference or relation to, about, or of." There is no substantive difference in this context among the phrases "relating to," "in connection with" or "arising from." See Roby, supra; see also Coregis Ins. Co. v. American Health Foundation, Inc., 241 F.3d 123, 128 (2d Cir. 2001)(ordinary meaning of "related to" broader than "arising out of"). Accordingly, the forum selection clause in the Letter Agreement is sufficiently broad to include any conflict arising out of NBP's and ESI's business relationship. See National Micrographics Systems, Inc. v. Canon U.S.A., Inc., 825 F.Supp. 671, 677 (D.N.J. 1993)(dealer's claims based on supplier's alleged breach of oral agreement to pay commissions fell within forum selection clause of written dealer agreement executed more than ten years later that encompassed "any and all claims hereunder"). See also International Business Software Solutions, Inc. v. Sail Labs Technology, AG, 440 F.Supp.2d 357, 363 (D.N.J. 2006).

NBP's arguments as to why the forum selection clause does not apply to its claims are not persuasive. NBP asserts that although the terms of the 2003 oral agreement and the Letter Agreement are otherwise identical, the oral agreement did not contain a forum selection clause. NBP, however, does not deny that it received the Letter Agreement containing the forum selection clause in late 2003. Therefore, the fact that the

7

parties never discussed a forum selection clause or a choice of law provision in connection with their "oral agreement" does not mean that ESI never communicated these stipulations to NBP prior to the time their business relationship began. While NBP refers to the "2003 oral agreement" in its memorandum contra, the complaint actually states that the parties entered into their oral agreement in early 2004. Complaint ¶17.

NBP also contends that Mr. Conchek did not sign the Letter Agreement until April 4, 2006. While this statement may be true, it does not necessarily follow that the forum selection clause and the choice of law provision were not effective until that date. See AmerisourceBergen, 2005 WL 1630843 at *2. Under Ohio law, which NBP asserts is controlling, a contract may be entered into even though the written instrument evidencing the terms of the agreement has not been executed by the parties. Hamilton Foundry & Mach. Co. v. International Molders & Foundry Workers Union of North America, 193 F.2d 209 (6th Cir. 1951). The parties, of course, may agree that the contract will not be binding until it is signed by both parties. Id. NBP maintains that the parties did, in fact, agree that the Letter Agreement would not become effective until both parties had signed. However, the handwritten notation added by Mr. Kiefer indicates that the Letter Agreement would become effective 1/1/04. Under both Missouri and Ohio law, this handwritten notation will prevail over any typewritten or printed language to the contrary. See Century 21-Andrew's Realty, Inc v. Adams, 691 S.W.2d 511, 512 (Mo. Ct. App. 1985)(rule clearly established that where printed portions of contract conflict with handwritten provisions or interlineations, latter prevail); Botzum Bros. Co v. Brown Lumber Co., 104 Ohio App. 507, 509 (9 Dist. 1957)(where printed portion of contract is inconsistent with handwritten specifications, written portion controls); Malcuit v. Equity Oil & Gas Funds,

Inc., 81 Ohio App.3d 236, 239 (9 Dist. 1992)(well settled in Ohio that typed portion of contract will prevail over printed portion, if inconsistent).

NBP next argues that the forum selection clause does not apply because the Letter Agreement did not incorporate the terms of the 2003 oral agreement. NBP points out that paragraph 6 of the Letter Agreement provides that the initial term "shall be for a period of three years months (sic) from the Effective Date," which it regards as April 4, 2006. NBP further points out that paragraph 14 (sic) of the same document states that the Letter Agreement "contains the entire agreement between the parties concerning the subject matter hereof, and [that] no other representation or agreement between the parties, whether oral or written, [which is] not embodied herein shall be of force or effect." Letter Agreement ¶13. NBP maintains that there is not a single reference to the 2003 oral agreement within the four corners of the Letter Agreement and that no document exists which either modifies the terms of the Letter Agreement or which states that the parties intended their oral agreement to be incorporated into, or superseded by, the Letter Agreement.

NBP seems to have the argument backwards. See Morgan Laboratories, Inc. v. Micro Data Base Systems, Inc., No. C96-3398 TEH, 1997 WL 258886 at *4 (N.D.Cal. Jan. 22, 1997)(where written agreement did not include forum selection clause and provided that any modifications to its terms must be in writing and signed by both parties, forum selection clause in shrinkwrap licence printed on outside of shipping box was not enforceable). Given the integration clause in paragraph 13 of the Letter Agreement, there would be no need to refer to the 2003 oral agreement to modify the terms of the Letter Agreement. Pursuant to the terms of the integration clause, the Letter Agreement contains the entire agreement between ESI and NBP concerning their business

9

relationship.  The 2003 oral agreement, according to this same provision, is of no force or effect except to the extent that its terms are embodied in the Letter Agreement.  Under Missouri law, in the absence of fraud, a valid written agreement merges all prior and contemporaneous negotiations as to the subject matter. Comp & Soft, Inc. v. AT & T Corp., 252 S.W.3d 189, 197 (Mo. Ct. App. 2008).  Ohio law appears to be the same.  See Fontbank, Inc. v. CompuServe, Inc., 138 Ohio App.3d 801, 808 (10 Dist. 2000)(written contract presumed to be complete integration of parties' agreement).  NBP has not alleged any fraud and does not dispute that the Letter Agreement was intended to govern all aspects of the parties' business relationship.  Consequently, the 2003 oral agreement could not have survived.  Comp & Soft, supra.

The two unreported Ohio cases cited by NBP are inapposite. In Honchul v. Driver's Mart of Cincinnati LLC, NO. CA2000-09-021, 2001 WL 208878 (Ohio App. 12 Dist. Mar. 5, 2001), the parties entered into three separate written agreements, only one of which contained an arbitration clause.  The court held that the dispute related only to the financing agreement.  Because the financing agreement did not contain an arbitration clause, the common pleas court erred by dismissing the suit for lack of subject matter jurisdiction.  Id. at *3.  In Oncology Div. of UIMA, Inc. v. Community Ins. Co., No. C-020056, 2002 WL 31039633 (Ohio App. 1 Dist. Sep. 13, 2002), the parties operated before 1999 under a written provider agreement that contained an arbitration clause. In 1999, the parties entered into a second provider agreement that did not mention arbitration, but expressly reserved the right of the parties to file suit.  Although the second agreement referred to the earlier one, it included a clause stating that the subsequent agreement contained the entire agreement between the parties.  Based on this integration clause, the court of appeals affirmed the trial court's denial of the defendant's

10

motion to stay proceedings pending arbitration.  Id. at *3.

Lastly, NBP argues that ESI failed to show that the forum selection clause is mandatory and applies to the dispute here. In the cases cited by NBP, the party seeking enforcement of the forum selection clause is required to show (1) that the clause was reasonably communicated to the party resisting enforcement; (2) that the clause is mandatory; and (3) that the claims and parties are subject to the clause.  Diesel Props S.r.L. v. Greystone Business Credit II LLC, No. 07 Civ. 9580(HB), 2008 WL 4833001 at *6 (S.D.N.Y. Nov. 5, 2008)(citing Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007); John Boutari & Son, Wine and Spirits, S.A. v. Attiki Importers and Distributors, Inc., 22 F.3d 51, 53 (2d Cir. 1994); Roby, supra).

NBP does not contend that the forum selection clause contained in the Letter Agreement was inconspicuous.  By sending the Letter Agreement to Mr. Concheck at the outset of the parties' business relationship, ESI reasonably communicated the existence of the forum selection clause to NBP.  See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006)(forum selection clause reasonably communicated to parties where it was plainly printed on agreement).

The language of the forum selection clause in the Letter Agreement also is mandatory.  The Court of Appeals for the Sixth Circuit held that a clause similar to the one in this case which provided that all disputes arising in connection with the contract shall be heard at the supplier's principal place of business in Germany was mandatory and that the German court's jurisdiction over such disputes was exclusive.  See General Elec. Co v. G. Siempelkamp GmbH & Co., 29 F.3d 1095, 1099 (6th Cir. 1994).

Moreover, ESI has shown that the forum selection clause applies by its own terms to NBP's claims.  NBP attempts to

11

differentiate between claims arising under the 2003 oral agreement and those arising under the Letter Agreement which it contends did not become effective until April 4, 2006. However, the language of the forum selection clauses refers to any dispute concerning this Letter Agreement or any of Client Consultant's services. NBP's argument that the clause encompasses disputes only under the Letter Agreement renders the language "or any of Client Consultant's services" superfluous and thus violates a cardinal rule of contract construction. See TAP Pharmaceutical Prod., Inc. v. State Bd. Of Pharmacy, 238 S.W.3d 140, 144 (Mo. 2007); Wohl v. Swinney, 118 Ohio St.3d 277, 280 (2008). Because NBP admittedly continued to perform the same services throughout the parties' business relationship, the forum selection clause is applicable to all of the services it performed. See Interamerican Trade Corp. v. Companhia Fabricadora de Pecas, 973 F.2d 487, 490 (6th Cir. 1992)(rejecting plaintiff's argument that forum selection clause did not apply to its claims against defendant for breach of oral agreements).

Because the forum selection clause is mandatory, covers the claims at issue and was communicated to the party resisting enforcement, it is presumptively enforceable. Phillips, supra; BNY AIS Nominees Ltd. v. Quan, 609 F.Supp.2d 269, 274 (D.Conn. 2009). The resisting party must then rebut this presumption by showing either that the clause was the product of fraud or overreaching or that its enforcement would be unreasonable or unjust. Id.; Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 722 (6th Cir. 2006).

NBP acknowledges that it would have the burden of proof if it were contesting the validity or enforceability of the forum selection clause, but has elected to challenge only the applicability of the clause to its claims. Unless the alleged fraud induced the party resisting enforcement to agree to the

inclusion of the clause in the parties' agreement, a general claim of fraud does not affect the validity of the forum selection clause. Id. Further, a finding of unreasonableness or injustice sufficient to avoid the clause must be based on more than mere inconvenience. Rather, it must appear that enforcement of the clause would cause such manifest and grave inconvenience that the resisting party will effectively be denied a meaningful day in court. Id. at 722-23. NBP has not alleged that the clause was the product of fraud or overreaching or that, if applicable, its enforcement would be unreasonable or unjust. NBP also has not claimed that the United States District Court for the Eastern District of Missouri could not effectively and fairly handle this suit. See Wong v. PartyGaming Ltd., 589 F.3d 821, 828 (6th Cir. 2009)(whether the selected forum would ineffectively or unfairly handle the suit is a factor in deciding to enforce a forum selection clause). For these reasons, NBP has not sustained its heavy burden of establishing that the forum selection clause contained in the Letter Agreement should be set aside. See Total Quality Logistics v. Cavendish Farms, Inc., No. 1:09-CV-221, 2010 WL 348316 at *4 (S.D.Ohio Jan. 26, 2010). The Court therefore concludes that the clause is enforceable.

## V. Balancing the Factors Under §1404(a)

The first factor to be considered in ruling on a motion to transfer is the convenience of the parties. By consenting to the forum selection clause, NBP and ESI agreed that the United States District Court for the Eastern District of Missouri is a convenient forum. Viron, 237 F.Supp.2d at 816 (parties' convenience already reflected in mandatory forum selection clause). The Court has determined that this clause is enforceable. Having contractually agreed to litigate its claims in Missouri, NBP cannot now be heard to complain that Missouri is an inconvenient forum. See Northwestern Nat. Ins. Co. v.

Donovan, 916 F.2d 372, 378 (2d Cir. 1990)(signing of valid forum selection clause is waiver of right to move for change of venue on grounds of inconvenience to moving party). Accordingly, this factor weighs in favor of transfer.

Although the existence of a valid forum selection clause waives a party's right to assert its own inconvenience regarding the contractual forum, courts still must consider the convenience of witnesses before transferring a case. See Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (2d Cir. 1989). NBP and ESI disagree about which forum is more convenient for potential witnesses and the relative ease of access to sources of documentary proof. In support of their positions, the parties submitted affidavits or declarations relating to the location of documents and witnesses.

Joshua Sturm, a Director of Account Management for ESI, lists himself, Mr. Kiefer, and five other employees of ESI at its St. Louis, Missouri headquarters as persons who were involved in discussions related to NBP's claims. Mr. Sturm avers that the only ESI employee located in Ohio who dealt with NBP concerning commissions was Diane Brake. Mr. Sturm also asserts that various historical documents and records reflecting communications with Mr. Concheck over the commissions claimed by NBP are located at ESI's headquarters in St. Louis.

In his affidavit, Mr. Concheck contends that the few ESI employees who may testify in this matter are the only witnesses located in Missouri and that the vast majority of the witnesses and the evidence are located in Ohio. He lists himself, Ken Perry, a former NBP employee, Diane Brake, and representatives of customers that NBP generated for ESI as several such witnesses. He further describes Ms. Brake as the ESI employee most knowledgeable about the parties' business relationship.

In its motion to transfer, ESI argues that the convenience

14

of witnesses is relevant only to the extent that potential witnesses may actually be unavailable for trial in either Columbus or St. Louis. ESI, without any discussion, states that it does not anticipate any problems regarding availability no matter which forum prevails.

NBP points out that the convenience of witnesses factor is not a numbers game. Nevertheless, NBP contends the numbers would favor keeping the case here given that many of the customers it generated for ESI, the third-party administrator ESI used to pay some of the fees due, and at least one employee of ESI all reside in Ohio. NBP also maintains that the convenience of the few potential witnesses employed at ESI's St. Louis headquarters should be granted little consideration.

Neither party, however, addresses the amenability of the witnesses to trial subpoenas in either forum, the disadvantages of deposition testimony versus live testimony, or any other criteria usually associated with the convenience of witnesses. If the location of each party's employees are given less consideration than the location of third-party witnesses, see Zimmer Enterprises, Inc. v. Atlandia Imports, Inc., 478 F.Supp.2d 983, 991 (S.D.Ohio 2007), the fact that the representatives of the customers NBP generated for ESI reside in Ohio militates against transfer.

Because this is an action for breach of contract, the evidence will largely consist of the documents maintained by the parties and their third-party business clients. Although the location of evidence is generally a relevant factor in the §1404(a) analysis, the location of documentary evidence is of little or no consequence since documents can be mailed, copied, or faxed to a remote location. Picker Int'l, Inc. v. Travelers Indem. Co., 35 F.Supp.2d 570, 574 (N.D.Ohio 1998). Accordingly, the location of evidence factor does not weigh in favor of either

granting or denying ESI's motion to transfer.  Id; see also AMF, Inc v. Computer Automation, Inc., 532 F.Supp. 1335, 1340 (S.D.Ohio 1982)(given existence of records both in this district and the transferee district, inconvenience would appear to be equally divided).

Public interest factors include, in diversity cases, holding the trial in a forum that is more familiar with controlling state law.  Wm. R. Haque, 468 F.Supp.2d at 963.  As previously noted, the Letter Agreement provides that Missouri law will govern.  ESI relies on this provision for its contention that Missouri law governs this dispute.  NBP repeats its argument that its claims are based on the 2003 oral agreement, and not the Letter Agreement.  Consequently, in its view, the choice of law provision contained in the Letter Agreement is inapplicable.  NBP further argues that Ohio conflicts of law rules mandate that the law of the state with the more significant relation to the contract should control.  NBP asserts that Ohio has a more significant relationship to the parties' agreement than Missouri and that Ohio law should therefore govern.

There is no reason to believe that the law of contracts is any different in Ohio or Missouri or that the application of one versus the other would lead to a different result in this case. The Court does find, however, that the choice of law provision in the Letter Agreement is enforceable for the same reasons that the forum selection clause is enforceable.  Therefore, this factor weighs slightly in favor of transfer.  See id.; Travelers, 2005 WL 1038842 at *4.

Public interest factors also include issues of docket congestion and concerns with resolving disputes locally.  Wm. R. Haque, supra.  ESI has submitted a table showing the median time intervals from filing to disposition of civil cases by federal district courts for the twelve-month time period ending March 31,

2009.  ESI asserts that the table shows a median time for the
Eastern District of Missouri of 21.5 months and a median time for
the Southern District of Ohio of 24.1.  For purposes of its
§1404(a) analysis, the Court does not find this difference
statistically significant.  The Court also does not view as
particularly relevant in this case where the claims arose or
where the contract was performed.  While these factors would be
relevant to a choice of law inquiry, they do not affect the
convenience of litigating in Ohio versus Missouri or the
interests of justice.  <u>Picker Int'l</u>, <u>supra</u>.  For these reasons,
the issues of docket congestion and the concern with resolving
disputes locally do not weigh in favor of granting or denying the
motion to transfer.

Balancing the relevant §1404(a) factors, the Court
concludes that they do not weigh strongly in either party's
favor.  Under such circumstances, the forum selection clause
controls.  <u>Applied Energy Technologies, Inc v. Solar Liberty
Energy Systems, Inc.</u>, No. 09-CV-11959-DT, 2009 WL 2777079 at *9
(E.D.Mich. Aug. 27, 2009).  "When the plaintiff bears the burden
of justifying non-enforcement of a valid forum selection clause
and the remaining §1404(a) factors are a 'wash,' then plaintiff
has failed to satisfy its burden of proof and the case should be
transferred ..."  <u>Viron</u>, 237 F.Supp.2d at 820.  <u>See</u> <u>also</u> <u>Candela</u>,
2010 WL 1253552 at *5 (in light of shifting of burden of proof to
plaintiff, state of neutrality militates in favor of transfer).

## VI. <u>Disposition</u>

Based on the foregoing reasons, ESI's motion to transfer
venue (#15) is GRANTED.  This action is TRANSFERRED to the United
States District Court for the Eastern District of Missouri.


                              /s/ George C. Smith
                              George C. Smith

United States District Judge