UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NATIONAL BENEFIT PROGRAMS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 4:10CV00907 AGF |
| EXPRESS SCRIPTS, INC., | ) ) ) |
| Defendant/ Third-Party Plaintiff, | ) ) ) |
| vs. | ) ) |
| THE REYNOLDS & REYNOLDS CO., | ) ) ) |
| Third-Party Defendant. | ) |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on The Reynolds & Reynolds Company's Motion to Dismiss the Third-Party Complaint (Doc. 47), Motion to Stay Discovery (Doc. 49) and Renewed Motion to Stay Discovery (Doc. 61). The Reynolds & Reynolds Company ("Reynolds") seeks to be dismissed from this matter in accordance with Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and has asked the Court to stay discovery pending the Court's ruling on Reynolds' Motion to Dismiss the Third-Party Complaint. For the reasons set forth below, both motions shall be denied.

**BACKGROUND**

    1.    **National Benefit Program, Inc.'s Complaint**

On December 22, 2009, National Benefit Programs, Inc. ("NBP") filed a Complaint against Express Scripts, Inc. ("ESI"), alleging that NBP entered into an oral agreement with ESI whereby NBP agreed to assist ESI in identifying, retaining, maintaining, and securing large corporate clients for ESI's prescription drug benefit programs ("NBP Suit"). NBP claims that ESI agreed to compensate NBP for its efforts to develop and market business for ESI, and that the compensation would be paid out of ESI's general assets. NBP further alleges that in late 2003 and early 2004, pursuant to its agreement with ESI, it secured a number of clients for ESI, including Reynolds. NBP also alleges that beginning at the end of the first quarter of 2004, ESI was obligated to pay NBP fees for the clients that NBP claims to have originated for ESI, including Reynolds. NBP claims that ESI continues to breach the agreement by failing to pay any of the fees owed to NBP which continue to accrue each quarter, and by wrongfully withholding the compensation it agreed to pay NBP for the origination of clients for ESI. Excluding interest, NBP claims that ESI has accounted for $2,811,133.65 in fees owed to NBP. NBP seeks an order requiring the "release" of the funds, and purports to state claims against ESI for breach of contract, unjust enrichment, and promissory estoppel.

    2.    **ESI's Third-Party Complaint**

On August 25, 2010, ESI filed a Third-Party Complaint (Doc. 39) against Reynolds claiming contractual indemnity against Reynolds. ESI attached two exhibits to its Third-Party Complaint - the original Complaint in this matter (Doc. 39-1) and a letter from ESI to

Reynolds dated October 3, 2008, that appears to have been signed by both parties. (Doc. 39-2). In its Third-Party Complaint and the exhibits attached thereto, ESI alleges as follows: For the period of January 1, 2004 through December 31, 2006, NBP claims that ESI owes it more than $292,000.00 in fees as a result of Reynolds' business relationship with ESI. In October 2006, ESI and Reynolds entered into a contract whereby Reynolds directed ESI to pay Reynolds a total of $247,698.25, representing amounts that ESI "initially thought" were to be accrued as commissions for Joe Concheck and/or NBP from January 1, 2004 to July 28, 2006. In consideration for the payment of the $247,698.25, Reynolds agreed to release ESI from any liability or responsibility in connection with the repaid monies and further agreed to indemnify, defend and hold ESI harmless in the event of a dispute with Mr. Concheck and/or NBP. In accordance with its contract with Reynolds, on October 6, 2006, ESI issued a check in the amount of $247,698.25 payable to Reynolds, and Reynolds cashed the check on October 24, 2006. Reynolds terminated its business relationship with ESI in or around 2007.

ESI further alleges that on February 2, 2010, ESI sent written notification to Reynolds notifying it of the NBP Suit and demanded that Reynolds indemnify, defend, and hold ESI harmless with respect to the NBP suit. To date, Reynolds has refused to do so.

## ANALYSIS

**1. Motion to Dismiss Standard**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001)

3

(quoting Neitzke v. Williams, 490 U.S. 319, 326-27 (1989)). To survive a motion to dismiss for failure to state a claim, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Id. at 556. As the United States Supreme Court recently reiterated in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly.

Under this standard, the task of a court is "to review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." Zoltek Corp. v. Structural Polymer Group, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (citing Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (noting "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible"). "This is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950).

Upon considering a motion to dismiss, a federal "court must accept as true all of the allegations contained in a complaint" that are applicable to legal conclusions. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). However, pleadings which present "no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.

"[I]n considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 n. 4 (8th Cir. 2003) (referring to writings that may be viewed as attachments to a complaint, such as the contracts upon which his claim rests). See also Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006) (citing Fed. R. Civ. P. 10(c) and noting that " written instruments attached to the complaint become part of it for all purposes. For that reason, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint."). Consequently, the factual allegations here are taken from ESI's Third-Party Complaint, including its attachments.

    **2.**     **Sufficiency of Allegations of Contractual Indemnity Against Reynolds**

Reynolds first argues that it has no contractual duty to indemnify ESI with respect to the NBP suit because it never entered into any contract with ESI which would create such a duty.

The parties agree that this diversity case is governed by Missouri law. The task of a federal court sitting in diversity is to attempt to predict how the forum state's highest court would resolve the issues. Allstate Ins. Co. v. Blount, 491 F.3d 903, 915 (8th Cir. 2007). Under Missouri law, a breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. Keveney v. Mo. Military Acad., 304 S.W.3d 98, 104 (Mo. 2010). Reynolds

argues that ESI cannot prove the first element, the existence of a contract, because there was no consideration.

To satisfy the first element, the existence of a contract, a plaintiff must plead: (1) the competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. Bldg. Erection Servs. Co. v. Plastic Sales & Mfg. Co., 163 S.W.3d 472, 477 (Mo. Ct. App. 2005).

In its Third-Party Complaint, ESI pled that "ESI and Reynolds entered into a contract whereby Reynolds directed ESI to pay Reynolds a total of $247,698.25 representing amounts that ESI initially thought were to be accrued as compensation for Joe Concheck/NBP . . . . In consideration for the payment of the $247,698.25, Reynolds agreed to release ESI from any liability or responsibility in connection with the repaid monies and further agreed to indemnify, defend, and hold ESI harmless in the event of a dispute with Mr. Concheck and/or NBP." (Doc. 39 at ¶ 13.) ESI also claims that the contract between ESI and Reynolds "was formed in a commercial setting by sophisticated parties substantially on equal footing." Id. at ¶ 19.

As grounds for its assertion that the Third-Party Complaint is deficient, Reynolds contends that ESI failed to plead the existence of a contract between itself and Reynolds because it has failed to sufficiently plead consideration for the alleged contract. Consideration is deemed sufficient to support a contract if it creates either a detriment to the promisee or a benefit to the promisor. See Earl v. St. Louis Univ., 875 S.W.2d 234, 236 (Mo. Ct. App. 1994) (citing In re Estate of Weinsaft, 647 S.W.2d 179, 183 (Mo. Ct. App. 1983)). "The

detriment to the promisee may consist of doing anything which he is not legally bound to do or refraining from doing anything which he has the legal right to do." Id.

When viewed in the light most favorable to ESI, the Court finds that the Third-Party Complaint sufficiently pleads consideration, as the facts alleged support an inference that ESI paid over disputed amounts to Reynolds, on the condition that in the event of a dispute with Mr. Concheck and/or NBP, Reynolds would indemnify, defend, and hold ESI harmless. Therefore, accepting as true all of the allegations in the Third-Party Complaint, ESI has sufficiently pled the existence of a contract between itself and Reynolds, as well as the terms of that contract. See Hamilton v. Palm, ___ F.3d ___, 2010 WL 3619580, at *2 (8th Cir. Sept. 20, 2010) (holding that "a plaintiff need only allege facts that permit the reasonable inference that the defendant is liable," even if "a savvy judge" might believe that actual proof may be improbable or recovery remote) (quoting Braden v. Wal-Mart Stores, 588 F.3d 585, 594 (8th Cir. 2009)).

ESI also alleges its own performance, that it sent notification to Reynolds of the NBP suit and demanded that Reynolds indemnify, defend, and hold ESI harmless with respect to the NBP suit, and that Reynolds has refused to do so in breach of its contract with ESI. Thus, accepting as true all of the allegations in the Third-Party Complaint, ESI has sufficiently pled a breach of contract claim against Reynolds.

### 3. Sufficiency of Allegations of Reynolds' Duty to Indemnify ESI in the NBP Suit

Reynolds also argues that the clear language of the alleged contract between ESI and Reynolds limits the time and subject matter of the indemnity provision in a manner that excludes the time and subject matter identified by NBP in its complaint against ESI. From its review of NBP's Complaint and the Third-Party Complaint, the Court does not agree. The text of the alleged contract between ESI and Reynolds states that the $247,698.25 at issue represents "amounts [Express Scripts] initially thought were to be accrued for commissions for Joe Concheck/National Benefit Programs from January 1, 2004 to July 28th, 2006," which is the same time period referenced in NBP's Complaint. The letter agreement between the parties further states that "Reynolds will indemnify, defend and hold Express Scripts harmless in the event of a dispute with Mr. Concheck and/or National Benefit Programs." (Doc. 39-2.).

Again, accepting as true all of the allegations in the Third-Party Complaint, ESI has pled sufficient facts to state a claim against Reynolds for indemnity for the time and subject matter identified by NBP in its complaint against ESI.

Nor is the Court persuaded by Reynolds' contention that it was just one of many clients referred to ESI by NBP, and that the alleged contract between ESI and Reynolds does not obligate Reynolds to indemnify ESI "for all payment wrongfully withheld from NBP for any client of ESI." (Doc. 48 at 6.) ESI does not appear to contend otherwise. Its Third-Party Complaint seeks indemnity from Reynolds to "the claims filed by NBP in the NBP Suit *relating to monies that NBP claims to be owed with respect to Reynolds' relationship with ESI*." (Doc. 39 at ¶21.) (emphasis added).

8

Lastly, Reynolds argues that the allegations of ESI's Third-Party Complaint are defeated by the allegations of NBP's Complaint against ESI. Specifically, Reynolds argues that NBP's Complaint alleges that: (1) the agreement between NBP and ESI provided that any compensation owed to NBP by ESI was to be paid solely by ESI, not the client, and it was to be paid out of ESI's general assets, and (2) there was no Broker of Record on the Reynolds/ESI account, so the payment was rightfully returned to Reynolds by ESI and did not create a duty to indemnify ESI. However, factual disputes are not properly determined on a motion to dismiss. Primary Residential Mortg., Inc. v. Guarantee Title Ins. Co., 2005 WL 2874663, at *2 (E.D. Mo. 2005). See also Peck v. Hoff, 660 F.2d 371, 374 (8th Cir.1981) ("A motion to dismiss does not test the facts to support the claim.").

Accordingly,

**IT IS HEREBY ORDERED** that The Reynolds & Reynolds Company's Motion to Dismiss Third-Party Complaint (Doc. 47) is **DENIED**.

**IT IS FURTHER ORDERED** that The Reynolds & Reynolds Company's Motion to Stay Discovery (Doc. 49) is **DENIED**.

**IT IS FURTHER ORDERED** that The Reynolds & Reynolds Company's Renewed Motion to Stay Discovery (Doc. 61) is **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 10th day of November, 2010.