UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NATIONAL BENEFIT PROGRAMS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 4:10CV00907 AGF ) |
| EXPRESS SCRIPTS, INC., | ) ) |
| Defendant/ Third-Party Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| THE REYNOLDS & REYNOLDS CO., | ) ) |
| Third-Party Defendant. | ) |

## **MEMORANDUM AND ORDER**

This case involves a claim by Plaintiff National Benefit Programs, Inc. ("NBP") against Express Scripts, Inc. ("Express"), for breach of contract, unjust enrichment and promissory estoppel. NBP alleges that it entered into an oral agreement with Express pursuant to which NBP solicited and secured corporate clients for Express's prescription drug benefit programs, and it seeks to recover fees and commissions allegedly owed under this agreement with Express. Express does not dispute that it had an agreement with NBP, and has apparently accounted for any compensation or commissions that arguably accrued under the agreement, but Express has not paid these amounts to NBP. Express asserts that the parties' relationship was governed by a written contract, and that

the payment of fees was contingent upon NBP's compliance with certain disclosure and authorization requirements, with which NBP failed to comply.

Currently before the Court is a motion to quash a subpoena duces tecum served on the attorneys who represented NBP in connection with the prior divorce proceedings in Ohio of Joseph Concheck, the owner of NBP (Doc. No. 69)[1] and a similar motion for protective order (Doc. No. 71), seeking the same relief. For the reasons stated below, NBP's motion for protective order shall be granted.

## BACKGROUND

In its complaint, NBP alleges that it had an oral agreement with Express, whereby NBP agreed to assist Express in identifying, retaining, maintaining, and securing large corporate clients for Express's prescription drug benefit programs. Express agreed to compensate NBP, with funds from Express's general assets, for NBP's efforts to develop and retain clients. NBP asserts that beginning in late 2003 and early 2004, pursuant to its oral agreement with Express, NBP secured clients for Express, including The Reynolds & Reynolds Co. ("Reynolds"), named as Third-Party Defendant herein, and that Express agreed to pay NBP a fee for each client, including Reynolds, that NBP secured. NBP contends that Express breached and continues to breach the agreement by failing to pay certain of the fees owed to NBP, and by wrongfully withholding the compensation Express agreed to pay for the origination of clients. NBP alleges damages in the amount

---

[1] In its motion to quash, NBP initially sought sanctions against Express and Express's legal counsel, but NBP withdrew its request for sanctions, without prejudice, in its reply brief (Doc. No. 72).

of $2,811,133.65, excluding interest, as a result of its reliance on Express's assurances and Express's breach of contract. NBP further contends that Express has accounted for, or set aside, these moneys as fees due NBP for its client development efforts. NBP asserts claims for breach of the oral contract, unjust enrichment, and promissory estoppel, and seeks an order requiring the "release" of the aforementioned funds.

NBP is a closely held corporation, owned by Joseph Concheck. In approximately 2004, Concheck and his then wife, Elaina Concheck, began divorce proceedings, that lasted more than five years, in the Court of Common Pleas of Franklin County, Ohio. During the divorce proceeding, the Ohio state court determined that NBP was a marital asset, which prompted NBP to intervene in the divorce proceedings. The law firm of Vorys, Sater, Seymour & Pease LLP ("Vorys") represented NBP in the divorce proceedings. After NBP intervened, it provided certain documents and testimony, including certain financial records, in order to generate a valuation by a court-appointed expert. Portions of that information, including the final valuation of NBP, were subject to a protective order (the "Ohio Protective Order") and a confidentiality order issued by the state court.

On February 23, 2011, Express issued a subpoena duces tecum (the "Subpoena"), in the Southern District of Ohio, to Vorys, directing the law firm to produce a broad range of documents related to Vorys' representation of NBP in the collateral divorce proceeding. It is not disputed that at least some portion of the documents requested were the subject of the Ohio Protective Order.

NBP initially filed a motion to quash the subpoena in the Southern District of Ohio and also filed the motion to quash and motion for protective order that are before this Court. On July 6, 2011, the district court in Ohio stayed its proceedings on the motion to quash, pending this Court's ruling on the motion for protective order.

In its motion for protective order, NBP asserts that the documents requested are irrelevant; remain subject to the terms of the Ohio Protective Order; are sought solely for the purpose of harassment; and are discoverable through other sources. Express appears to assert that this Court is without jurisdiction to review a subpoena issued in the Southern District of Ohio. Express also contends that the documents may contain relevant information; that the Ohio Protective Order does not shield production of the documents; that NBP has acted inconsistent with the terms of the Protective Order; and that Express should not be relegated to obtaining the documents and information from NBP and Concheck.

## **DISCUSSION**

The Subpoena served on Vorys is very broadly drafted. It seeks:

    1. All documents that [Vorys] filed with, or otherwise submitted to, any court (including, but not limited to, appellate courts) as counsel for [NBP] in the [divorce proceeding].

    2. All documents that [Vorys] provided, through discovery or otherwise, to any of the other parties and/or their counsel in the [divorce proceeding] that relate to NBP.

    3. All documents that [Vorys] provided, through discovery or otherwise, to the Court appointed expert Brian Russell of Valuation Analysts, LLC in the [divorce proceeding] that relate to NBP.

    4. All documents provided to [Vorys] by the Court appointed

4

expert Brian Russell of Valuation Analysts, LLC in the [divorce proceeding] that relate to NBP.

    5. All documents provided to [Vorys], through discovery or otherwise, by the Court or any of the other parties and/or their counsel in the [divorce proceeding] that relate to NBP.

**<u>Jurisdiction</u>**

In its initial brief, Express questioned the jurisdiction of this Court to issue the motion to quash. Although NBP asserts that Express has abandoned this argument, the Court will briefly address its jurisdiction, as a threshold matter.

Under Rule 45, a motion to quash must be addressed to the Court that issued the subpoena. *Stipe v. Comm'r of Internal Revenue,* No.4:09MC138 HEA, 2009 WL 1298316, at *1 (E.D. Mo. May 8, 2009). It is the issuing court that has the necessary jurisdiction over the party issuing the subpoena and the person served to enforce the subpoena. 9A Charles A. Wright, <u>Federal Practice and Procedure</u> § 2463.1, at 485-86 (3d ed. 2008).

There is a split in the Circuits regarding whether the court sitting in the district where the subpoena issued may properly exercise its discretion to "remit" a motion to quash for ruling by the court where the underlying litigation is pending. *In re Subpoenas Served on Wilmer, Cutler & Pickering and Goodwin Proctor LLP*, 255 F.Supp. 2d 1, 2 & n.2 (D.D.C. 2003) (citing cases). The Eighth Circuit has suggested that such a remittal from the court issuing the subpoenas is proper under Fed. R. Civ. P. 45(d). *See In re Digital Equip. Corp.,* 949 F.2d 228, 231 (8th Cir. 1991). In her Order, however, Judge Deavers found that the Ohio District Court lacked authority to transfer the motion

to quash to this Court, citing *Prosonic Corp. V. Baker*, No. 2:08-MC-007, 2008 WL 1766887, at *1 (S.D. Ohio April 7, 2008.) Doc. No. 86-1, at 6. Consistent with the law in the Ohio district, Judge Deavers did not remit the motion to quash to this district. But the Ohio District Court did stay its proceedings pending this Court's ruling on the motion for protective order, effectively remitting the matter for ruling by this Court. *See Floorgraphics, Inc v. News American Mkting In-Store Servs., Inc.,* No. 07-27(PJS/RLE), 2007 WL 1544572, at *2 (D. Minn. May 23, 2007) (holding that to "remit" does not denote a literal transference of a motion, but rather, a deferral of a ruling until the Court responsible for the underlying action has an occasion to address the issue); *Prosonic*, 2008 WL 1766887, at *2 (noting, "many times the court from which the subpoena has issued will 'remit' the matter to the other court by directing the parties to engage in motion practice before that court.") (citations omitted).

Inasmuch as the documents at issue are in the custody and control of NBP, this Court has jurisdiction to rule on the motion for protective order. That authority, coupled with the Ohio District Court's stay of proceedings pending this Court's ruling on the motion for protective order, form the basis of this Court's authority to rule on the motion for protective order. *In re Digital Equip. Corp.,* 949 F.2d at 231.

**<u>Standing</u>**

Express contends that the motion for protective order should be denied because NBP lacks standing to challenge a subpoena directed to Vorys, a non-party. A party ordinarily lacks standing to quash a subpoena served on a non-party, even where the

6

motivation is to "protect" the third party from undue burden or harassment. *See Coffeyville Res. Ref. & Mkts., LLC v. Liberty Surplus Ins. Corp.*, No. 4:08MC00017JLH 2008 WL 4853620, at *1 (E.D. Ark. Nov. 6, 2008)*; Mawhiney v. Warren Distrib.,* No. 8:05CV466 2007 WL 433349, at*1 (D. Neb. Feb. 7, 2007) (citations omitted), *aff'd*, No. 07-2753, 283 Fed. App'x 424, (8th Cir., July 10, 2008). Generally, "[a] motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena." *Streck, Inc. v. Research & Diagnostic Systems, Inc.*, No. 8:06CV458, 2009 WL 1562851, at *3 (D. Neb. June 1, 2009) (citations omitted); *Mawhiney*, 2007 WL 433349, at *1*; Johnson v. Gmeinder,* 191 F.R.D. 638, 639 n.2 (D. Kan. 2000).

Here, NBP asserts a "personal right" to challenge the disclosure of the information sought under the Subpoena, arising from the relationship between NBP, a closely held corporation; Concheck, its owner and president; and Vorys. Recognizing that many of the financial and business-related documents produced for purposes of the court-ordered valuation in the divorce proceeding belong to NBP, the Court believes that drawing a distinction between NBP; its principal, Concheck; and Vorys, its counsel, for purposes of protecting the confidentiality of the documents produced for the business valuation is highly artificial. In the absence of such an artificial distinction, NBP clearly has a "personal right" to control the disclosure of its financial and business records. *See QC Holdings, Inc. v. Diedrich*, No. 01-2338KHV, 2002 WL 324281, at *1 (D. Kan. Feb. 21, 2002) (citations omitted) (holding that a party may challenge a subpoena issued to a

nonparty bank due to the party's personal interest in its financial records). Therefore, like Judge Deavers, the Court concludes that NBP has standing to challenge the Subpoena. See *Millar v. Lakin Law Firm, P.C.,* No. 4:09MC460CEJ, 2009 WL 3253826, at *2 (E.D. Mo. Oct. 9, 2009) (allowing ex-husband to challenge, in breach of contract action, subpoena issued to his divorce attorney for documents produced in the divorce proceeding); see also *QC Holdings, Inc.*, 2002 WL 324281, at *1.

**Scope of Discovery**

Although the scope of discovery under Rule 26 is broad, Rule 26(b)(1) specifically states that the scope is as stated in the Rule "unless otherwise limited by court order." Fed. R. Civ. P. 26(b)(1). Further, Fed. R. Civ. P. 26(b)(2)(C) provides that "[o]n motion or on its own the court must limit the frequency or extent of discovery otherwise allowed by these rules," if it determines the discovery can be obtained from another source that is more convenient, less burdensome or less expensive, the party has ample opportunity to obtain the discovery in the action, or the burden or expense of the proposed discovery outweighs its likely benefit. For several of the reasons set forth in Fed. R. Civ. P. 26(b)(2)(C), the Court finds it appropriate to restrict the scope of the discovery set forth in the Subpoena.

**Effect of Ohio Protective Order**

Here, Express specifically seeks the production of documents that were produced in or received during the divorce proceeding. Paragraphs 3 and 4 of the Subpoena seek all documents provided to the court appointed expert by the Vorys firm in the divorce

8

proceeding that relate to NBP, and all documents provided to the Vorys firm by the court appointed expert in the divorce proceeding that relate to NBP. These requests clearly encompass documents shielded by the Ohio Protective Order. That order provides that the Ohio court "shall retain jurisdiction over the parties for enforcement of the provisions of this Order following final termination of this litigation" and further mandates that "[a]ll confidential information relative to the valuation of [Plaintiff] is limited to use in the present litigation." Ohio Protective Order ¶ 11. Therefore, although the divorce proceeding has concluded, the Ohio Protective Order is still in effect and requests for its modification should be directed to the Court that issued it. *Abraham v. Intermountain Health Care, Inc.*, 461 F.3d 1249, 1268 (10th Cir. 2006) (holding that as long as protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit is dismissed) (citation omitted). This Court declines to interfere with an extant protective order, issued by and subject to the authority of another Court. See *Id.; see also Donovan v. Lewnowski*, 221 F.R.D. 587, 588 (S.D. Fla. 2004).

**<u>Relevance and Undue Burden</u>**

NBP also asserts that the documents requested are irrelevant, that the Subpoena is brought primarily for the purposes of harassment, and that the exhaustive number of documents sought under the Subpoena is expensive and duplicative, especially since many of the documents are presently available as part of the court record in the divorce proceeding. The Court agrees with many of these contentions.

9

In its responsive briefs, Express asserts that the documents it seeks are discoverable because it is possible that NBP took a position in the divorce proceeding that is inconsistent with the position it now takes in its action against Express. The Court notes, however, that Express already has received the valuation report prepared by the court-appointed expert. And Express has offered nothing from that report that suggests the existence of any such contrary statements.

More importantly, though, Express did not focus its requests on documents or testimony that reflect the existence or absence of any receivables owed by Express. Rather, the requests seek all documents Vorys provided to the court; all documents related to NBP that Vorys provided to any party or to the court-appointed expert; and all documents related to NBP provided to Vorys, by the court-appointed expert, by the court, by any party, or through discovery. The expense to NBP of producing all documents responsive to these requests would be excessive, as the requests require counsel effectively to recreate the discovery of the ancillary divorce proceeding from several years ago, rather than independently requiring documents by relevant subject areas. Accordingly, the Court concludes that the compliance with the Subpoena would be overly burdensome.

Moreover, to the extent such documents exist, the requests would include salary paid to Concheck, property and assets of NBP unrelated to the agreement with Express, agreements and business dealings NBP had with other entities, and myriad other documents that are wholly unrelated to the issues in this lawsuit. As such, the Subpoena

is grossly over broad, and requests confidential financial information of NBP unrelated to the litigation at hand.

Further, paragraph 1 of the Subpoena requests all documents that Vorys filed with or submitted to the court, including to the appellate court, as counsel for NBP. To the extent that documents are available as part of the public record, the Court agrees that NBP should not be required to produce them pursuant to the Subpoena, nor should NBP be required to compare the documents to determine which were produced as part of the public record. To the extent they are not part of the public record, the Court assumes that some, if not all, such documents are subject to the Protective Order.

Finally, Express can obtain the discovery it seeks through more narrowly-tailored requests directed to NBP and Concheck. It appears that NBP now has in its possession all of the documents from Vorys. If Express believes that NBP has improperly withheld documents covered by its discovery requests,[2] it may file a motion to compel production in this case.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Protective Order (Doc. No. 71) is **GRANTED**.

---

[2] The Court notes that the mere fact that a business record or other financial document was produced in the divorce proceeding pursuant to the Ohio Protective Order would not alone provide a basis for NBP to object to the production of its own business records in response to a request directed to NBP for relevant NBP business records.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Quash Subpoena Duces Tecum (Doc. No. 69) is **DENIED as moot**.

						_____
						AUDREY G. FLEISSIG
						UNITED STATES DISTRICT JUDGE

Dated this 1st day of December, 2011.