UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NATIONAL BENEFIT PROGRAMS, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:10CV00907 AGF ) |
| EXPRESS SCRIPTS, INC., | ) ) |
| Defendant/ Third-Party Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| THE REYNOLDS & REYNOLDS CO., | ) ) |
| Third-Party Defendant. | ) |

# MEMORANDUM AND ORDER

Plaintiff National Benefit Programs, Inc., brings this action for breach of contract, unjust enrichment, and promissory estoppel to recover commissions allegedly owed it by Defendant Express Scripts, Inc. Now before the Court is Plaintiff's Motion for Leave to Amend its Complaint (Doc. No. 116 ).[1] For the reasons set forth below, Plaintiff's Motion to Amend will be denied.

---

[1] Defendant's Motion for Summary Judgment on Plaintiff's Complaint (Doc. No. 93) is pending before the Court and will be addressed in a separate order of the Court. In addition, Defendant asserts a third-party claim for contractual indemnity against one of its clients, Third-Party Defendant, The Reynolds and Reynolds Company ("Reynolds"). The pending motions related to that claim also will be addressed in a separate order.

## BACKGROUND

The record before the Court establishes the following. In late 2003 Plaintiff and Defendant entered into an oral agreement pursuant to which Plaintiff agreed to assist Defendant in identifying, retaining, and maintaining corporate clients for Defendant's prescription drug benefit programs. In exchange for these services, Defendant agreed to set aside and pay commissions to Plaintiff.

In November 2003, Defendant sent Plaintiff a proposed Letter Agreement setting forth the obligations of the parties with respect to the aforementioned brokerage arrangement. That version of the Letter Agreement was signed by Marc Palmer, then a Vice President of Defendant. Plaintiff, however, never signed this document. Plaintiff alleges that the terms of the 2003 oral agreement and the proposed Letter Agreement were the same. (Complaint, Doc. No. 2 at ¶ 13). However, the proposed Letter Agreement was not executed at the time it was first delivered to Plaintiff, and in late 2005, Defendant again submitted it to Plaintiff.

The typed portion of the Letter Agreement provided that it would become effective on the date it was executed by both parties. William Kiefer, a Vice President and General Manager for Defendant, has testified by deposition that he signed the Letter Agreement before sending it to Plaintiff in late 2005 and that at that time he also added a handwritten notation, "effective 1/1/04," below his signature. (Doc. No. 137 at 5; and Doc. No. 118 at 6).

Plaintiff's representative, Joseph Concheck, signed the Letter Agreement on April 4, 2006. Concheck admits that he does not know whether the handwritten notation appeared on the copy of the Letter Agreement he signed. (Doc. No. 137 at 5; Doc. No. 118 at 3).

Defendant has produced email and other internal communications indicating that whoever was to sign the Letter Agreement on its behalf was asked to write in an effective date of January 1, 2004 prior to delivering it to Plaintiff for signature. (Doc. No. 139-2). After the terms of the proposed Letter Agreement were finalized, Daniel King, an employee of Defendant, sent an email to Diane Brake, another of Defendant's employees, stating: "ESI usually signs an outgoing broker agreement before sending to the client, do you think Mark Palmer should sign or is it now more appropriate to have Bill Kiefer sign? Whoever signs, I will ask them to write in an effective date of 01/01/04." (Doc. No. 139-2). In addition, Defendant offers a declaration confirming that Kiefer signed the contract on November 10, 2005, and sent a cover letter on that date to Concheck stating: "Please sign and return the original to my attention at the address below. Be sure that you keep a copy for your records." (Doc. No. 116, Akitti Decl., Exh. A.)

The Letter Agreement included an integration clause providing that it "contain[ed] the entire agreement between the parties regarding the subject matter hereof." (Doc. No.15-1 at 8, ¶13.) In addition, the Letter Agreement obligated Defendant to pay commissions to Plaintiff if one of two conditions was met. (Doc. No.15-1 at 5, ¶ 2.) Commissions would be payable if a client had entered into an agreement with Defendant

disclosing the fact that commissions would be accrued on the account and authorizing payment of the commissions to Plaintiff. *Id.* Alternatively, commissions would be payable if Plaintiff obtained from the client and submitted to Defendant, a separate broker record or agreement disclosing the commissions and authorizing their payment. *Id.*

Beginning in early 2004, Plaintiff retained nine client companies[2] on Defendant's behalf. But Defendant did not pay over commissions to Plaintiff, because Plaintiff did not obtain the written authorizations from the clients that Defendant believed were required. Defendant advised Plaintiff of its position. Plaintiff neither requested nor received payment of commissions with respect to any of these clients until at least September of 2006, almost six months after the execution of the Letter Agreement. Beginning in September 2006, Plaintiff requested payment of commissions with respect to these companies, but Defendant refused to pay on the ground that Plaintiff lacked the required authorizations. On December 22, 2009, Plaintiff filed this action in the United States District Court for the Southern District of Ohio, seeking $2,811,133.65[3] in unpaid commissions. After the parties fully briefed the question of venue (Doc. Nos. 15, 17, & 18), the Ohio District Court transferred the case to this Court on May 17, 2010, pursuant to a forum selection clause contained in the Letter Agreement. (Doc. No. 21.) At that

---

[2] The clients, as identified in the pleadings, were Abercrombie; Antioch; Brunswick; Clinton County; Fresh Mark; MeadWestvaco; Stanley Steemer; Relizon; and The Reynolds and Reynolds Co., Third-Party Defendant.

[3] It is undisputed that after the filing of this lawsuit Defendant approached four of the clients and obtained written authorizations from them to release the accrued commissions relative to each and that these commissions have since been paid to Plaintiff.

time, and on the basis of the record before it, the Ohio District Court concluded that the handwritten notation on the Letter Agreement as to the effective date would control over any conflicting typed provisions, that the Letter Agreement was effective as of January 1, 2004, and that the "[t]he 2003 oral agreement is of no force and effect except to the extent its terms are embodied in the Letter Agreement." *Id*. at 10.  After the ruling of the Ohio District Court, Plaintiff, however, continued to assert that the oral agreement applied to its claims and to seek recovery under that agreement.  The parties conducted extensive discovery and just prior to the close of discovery in July, 2011, Plaintiff took Kiefer's deposition.

Defendant filed its motion for summary judgment on September 16, 2011.  In support of its motion for summary judgment, Defendant asserted that the Letter Agreement became effective January 1, 2004, by virtue of the handwritten notation, that it superseded the oral agreement, and was applicable to Plaintiff's claims.  Therefore, Defendant asserted, Plaintiff could not prevail because it had no basis for recovery under the oral agreement and had not plead claims based upon the Letter Agreement.  Thirty days later, Plaintiff filed the instant motion to amend its complaint to plead an alternate basis for recovery under the written Letter Agreement.

## **DISCUSSION**

In support of its motion to amend, Plaintiff contends that under the Federal Rules of Civil Procedure leave to amend should be freely given and that allowing the amendment will not result in prejudice to the Defendant.  In addition, Plaintiff asserts that

5

prior to deposing Kiefer it had no basis for pleading an alternative basis for recovery under the Letter Agreement.

Defendant opposes Plaintiff's request to amend as dilatory and prejudicial, asserting that, as a result of prior rulings in the case and information developed throughout discovery, Plaintiff was, or should have been, aware of the import of the Letter Agreement to its recovery, but failed to address the issue until one month after the filing of the Defendant's motion for summary judgment.

As noted above, Plaintiff filed this motion for leave to amend its complaint to add a claim for breach of the Letter Agreement on October 17, 2011, almost two years after the filing of the complaint. With respect to the ensuing events in this case, Plaintiff filed the motion to amend 17 months after the action was transferred to this Court (based on the venue provision contained in the written Letter Agreement), 15 months after the deadline specified in the scheduling order (Doc. No. 20) for amendment of the complaint, three months after Kiefer's deposition was taken and discovery was closed, 30 days after Defendant filed its motion for summary judgment, and approximately three months prior to the trial date.

Generally, leave to amend is freely given, Fed. R. Civ. P. 15(a)(2), but there is no absolute right to amend a pleading. *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003). Where as here, a party requests leave to amend a pleading outside the time period established by a scheduling order, a court properly considers whether the party has demonstrated "good cause" for the delay, within the meaning of Federal Rule of

Civil Procedure 16(b). *Sherman v. Winco Fireworks, Inc.,* 532 F.3d 709, 714-16 (8th Cir. 2008) (citation omitted). The primary measure of good cause is the movant's diligence in attempting to meet the requirements of the scheduling order. *Id.* at 717 (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). Prejudice to the nonmovant resulting from the proposed amendment also may be a relevant factor, but generally, a court need not reach the issue of prejudice if the movant has not been diligent in seeking leave to amend. *Id.*

In this case, Plaintiff asserts that its inability, until late in the discovery process, to depose Kiefer occasioned the delay in requesting leave to amend. In essence, Plaintiff asserts that Kiefer's deposition testimony raised, for the first time, the possibility that the Letter Agreement might have become effective on January 1, 2004, and thus applicable to Plaintiff's claims.

The Court finds this assertion unpersuasive, and upon review of the parties' arguments and the record, concludes that Plaintiff has not been diligent in seeking leave to amend. The record before the Court clearly demonstrates that Plaintiff knew of the existence of the Letter Agreement, the hand written notation, and Defendant's position regarding the import of the handwritten notation, from the outset of this lawsuit. This is not a case where new evidence or issues were revealed during the course of discovery. Defendant contended that the Letter Agreement superseded any oral agreement during the briefing of the motion to transfer venue, almost two years prior to Plaintiff's request for leave to amend. In the ruling on that motion, issued more than 17 months before the

filing of the request to amend, the Ohio District Court considered the Letter Agreement and determined that the forum selection clause in that agreement was controlling and required transfer of the case. Moreover, the Ohio court opined that the handwritten notation as to the effective date would "prevail over any typewritten printed language to the contrary" and that the Letter Agreement had superseded the alleged oral agreement and would therefore govern. This ruling alone belies Plaintiff's assertion that information revealed in Kiefer's deposition gave rise to a new theory of recovery. Since the issuance of that ruling, however, the significance of the Letter Agreement, and in particular, its effective date, have been the focus of much of the discovery in this case. Despite these facts, Plaintiff continued to pursue recovery exclusively under the oral agreement, testifying more than twenty five times on deposition that he was seeking recovery only under that agreement. (Doc. No. 137 at 3).

Finally, Plaintiff offers no explanation for the three month delay between Kiefer's deposition, which it says provided the impetus for its proposed amendment, and the filing of its request for leave to amend. In fact, only after Defendant filed its motion for summary judgment did Plaintiff move for leave to amend. On the basis of the foregoing, the Court rejects Plaintiff's assertion that information revealed in Kiefer's deposition gave rise to a new theory of recovery and finds that Plaintiff has conducted itself in a dilatory manner and has failed to offer good cause for the delay.

In further support of its motion to amend, Plaintiff asserts that prejudice will not result if the motion to amend is granted. Because Plaintiff has not explained its lack of

8

diligence in seeking leave to amend, consideration of any prejudice that might result from the amendment is not required. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). However, contrary to Plaintiff's assertion, the Court concludes that Defendant would be prejudiced if the motion for leave to amend were granted at this juncture, approximately one month prior to the trial date. Allowing Plaintiff to amend its complaint at this juncture would necessitate a reopening of discovery and would require a continuance of the trial setting. Such delay and the postponement of the trial constitute prejudice sufficient in themselves to justify denial of the right to amend the complaint. *See, e.g.*, *Maskey v. United States*, No.2:10CV20MLM (E.D. Mo. July 12, 2011) (denying leave to amend two months prior to trial and noting the prejudicial effect of delaying trial); *Leaf Funding, Inc. v. Florissant MRG, Inc.,* No. 4:08CV284 CEJ, 2009 WL 2849587, at *1 (E.D. Mo. Sept. 1, 2009) (holding that allowing an amendment after the filing of a motion for summary judgment would necessitate continuance of the trial setting and would be prejudicial).

In the absence of good cause shown, and in light of the prejudice to Defendant resulting therefrom, Plaintiff's motion for leave to amend the complaint will be denied. *See, e.g.*, *Barstad v. Murray County*, 420 F.3d 880, 883 (8th Cir. 2005) (affirming the denial of leave to amend under Rule 16(b) because the plaintiff had eight months to request an amendment of the scheduling order and "knew of the claims it sought to add when it filed the original complaint"); *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (affirming, under Rule 16(b), the denial of the plaintiff's motion to amend the complaint

because she provided no reasons why the amendment could not have been made earlier);

*Traveler's Indem. Co. v. Holtzman Prop., LLC*, No. 4:08 CV351CJS, 2009 WL 485056, at *2 (E.D. Mo. Feb. 26, 2009) (denying leave to amend where the plaintiff knew of its claim for six months before seeking leave to amend).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to Amend (Doc. No. 116) is **DENIED**.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of December, 2011.