UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NATIONAL BENEFIT PROGRAMS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 4:10CV00907 AGF |
| EXPRESS SCRIPTS, INC., | ) ) ) |
| Defendant/ Third-Party Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| THE REYNOLDS & REYNOLDS CO., | ) ) |
| Third-Party Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff National Benefit Programs, Inc., brings this action for breach of contract, unjust enrichment, and promissory estoppel to recover commissions allegedly owed it by Defendant Express Scripts, Inc.  Now before the Court are Defendant's Motion for Summary Judgment on Plaintiff's Complaint (Doc. No. 93) and the Motion of Third-Party Defendant, The Reynolds and Reynolds Company[1] ("Reynolds") to Sever (Doc. No. 77). For the reasons set forth below, Defendant's motion for Summary Judgment on Plaintiff's

---

[1] The pending cross motions for summary judgment with respect to Defendant's third-party claim for contractual indemnity against Reynolds will be addressed in a separate order of the Court.

Complaint will be granted and Third-Party Defendant's Motion to Sever will be denied as moot.

## BACKGROUND

The record before the Court establishes the following.  In late 2003, Plaintiff and Defendant entered into an oral agreement pursuant to which Plaintiff agreed to assist Defendant in identifying, retaining, and maintaining corporate clients for Defendant's prescription drug benefit programs.  In exchange for these services, Defendant agreed to set aside and pay commissions to Plaintiff.

In November 2003, Defendant sent Plaintiff a proposed Letter Agreement setting forth the obligations of the parties with respect to the aforementioned brokerage arrangement.  This version of the Letter Agreement was signed by Marc Palmer, then a Vice President of Defendant, but Plaintiff did not sign the proposed Letter Agreement at that time.  Between November 2003 and February 2004, the parties had several discussions regarding the proposed terms of their agreement.  Plaintiff alleges that the terms of the 2003 oral agreement and the proposed Letter Agreement were the same. (Complaint, Doc. No. 2  at ¶ 13).

Beginning in early 2004, Plaintiff retained nine client companies[2] on Defendant's behalf.  Throughout 2004 and 2005, Defendant set aside, but did not pay to Plaintiff, commissions allegedly due with respect to these clients, because Defendant asserted that

---

[2]   The clients, as identified in the pleadings, were Abercrombie; Antioch; Brunswick; Clinton County; Fresh Mark; MeadWestvaco; Stanley Steemer; Relizon; and The Reynolds and Reynolds Co., Third-Party Defendant.

Plaintiff did not obtain the written client authorizations that were required by the Letter Agreement. Defendant communicated to Plaintiff by at least October 26, 2005, that it needed to obtain written authorization from the clients before the commissions could be released.

In November 2005, Defendant again submitted the proposed Letter Agreement to Plaintiff. The typed portion of the Letter Agreement provided that it would become effective on the date it was executed by both parties. William Kiefer, a Vice President and General Manager for Defendant, has testified by deposition that he signed the Letter Agreement before sending it to Plaintiff in late 2005, and that at that time, he also added a handwritten notation, "effective 1/1/04," below his signature. (Doc. No. 137 at 5; and Doc. No. 118 at 6).

Plaintiff's representative, Joseph Concheck, signed the Letter Agreement on April 4, 2006. Concheck admits that he does not know whether the handwritten notation appeared on the copy of the Letter Agreement he signed. (Doc. No. 137 at 5; Doc. No. 118 at 3). It is undisputed, however, that Concheck made a change to the Letter Agreement, striking out a provision on the attached fee schedule. (Doc. No. 15-1 p.7). On April 19, 2006, Steven Webb approved Concheck's handwritten change on behalf of Defendant. Due to internal concerns that the change should be approved by Kiefer, Kiefer also signed Concheck's handwritten change to the Letter Agreement on May 12, 2006. (*Id.*; Doc. No. 140 & Exhs. A and B.)

3

Defendant has produced email and other internal communications indicating that whoever was to sign the Letter Agreement on its behalf was asked to write in an effective date of January 1, 2004, prior to delivering the agreement to Plaintiff for signature. (Doc. No. 139-2). After the terms of the proposed Letter Agreement were finalized, Daniel King, an employee of Defendant, sent an email to Diane Brake, another of Defendant's employees, stating: "ESI usually signs an outgoing broker agreement before sending to the client, do you think Mark Palmer should sign or is it now more appropriate to have Bill Kiefer sign? Whoever signs, I will ask them to write in an effective date of 01/01/04." *Id.* In addition, Defendant produced a cover letter dated November 10, 2005, and signed by Kiefer asking Concheck: "Please sign and return the original to my attention at the address below. Be sure that you keep a copy for your records." (Doc. No. 116, Akiti Decl., Exh. A.)

In opposition to the motion for summary judgment, Plaintiff relies largely on a portion of the deposition testimony of Joshua Sturm, Director of Account Management for Defendant. Sturm initially testified on deposition that he would agree that Concheck executed the Letter Agreement before Kiefer. (Doc. No.137-3 at 44:13-45:1.) However, later in the same deposition Sturm corrected that testimony stating that he "could not speak" to the question of when the document was signed, and testified that Kiefer "would be the one" who would know when the document was signed. *Id.* at 156:3-7. On the erratta sheet of the deposition transcript Sturm further clarified his initial answer to the

4

question of whether Kiefer signed the Agreement after Concheck, correcting it to read "I don't know." (Doc. No. 137-3 at 94:22- 95:8.)

The Letter Agreement, as executed, included an integration clause providing that it "contain[ed] the entire agreement between the parties regarding the subject matter hereof." (Doc. No.15-1 at 8, ¶13.) In addition, it obligated Defendant to pay commissions to Plaintiff if one of two conditions was met. (*Id*. at 5, ¶ 2.) Commissions would be payable if a client had entered into an agreement with Defendant disclosing the fact that commissions would be accrued on the account and authorizing payment of the commissions to Plaintiff. *Id*. Alternatively, commissions would be payable if Plaintiff obtained from the client and submitted to Defendant, a separate broker record or agreement disclosing the commissions and authorizing their payment. *Id*.

Beginning in September 2006, Plaintiff requested payment of commissions with respect to the clients at issue, but Defendant refused to pay, asserting that Plaintiff lacked the required authorizations. On December 22, 2009, Plaintiff filed this action in the United States District Court for the Southern District of Ohio, seeking $2,811,133.65[3] in unpaid commissions. Defendant filed a motion for change of venue, which the parties fully briefed. (Doc. Nos. 15, 17, & 18.) After a review of the matter, the Ohio District Court granted the motion and transferred the case to this Court on May 17, 2010, pursuant to a forum selection clause contained in the Letter Agreement. (Doc. No. 21.) In a

---

[3] It is undisputed that after the filing of this lawsuit Defendant approached four of the clients and obtained written authorizations from them to release the accrued commissions relative to each and that these commissions have since been paid to Plaintiff.

5

lengthy and well-reasoned opinion, the Ohio District Court concluded, on the basis of the record before it, that the handwritten notation on the Letter Agreement as to the effective date would control over any conflicting typed provisions; that the Letter Agreement was effective as of January 1, 2004; and that the "[t]he 2003 oral agreement is of no force and effect except to the extent its terms are embodied in the Letter Agreement." *Id*. at 10. After the ruling of the Ohio District Court, Plaintiff, however, continued to assert that the oral agreement applied to its claims and to seek recovery under that agreement. Plaintiff persisted in his contention that the Letter Agreement was not effective until signed by both parties in April 2006. The parties conducted extensive discovery and just prior to the close of discovery in July, 2011, Plaintiff took Kiefer's deposition.

      Defendant filed it motion for summary judgment on September 16, 2011, asserting that no commissions are owed to Plaintiff. In support of its motion for summary judgment, Defendant asserts that the Letter Agreement became effective January 1, 2004, by virtue of the handwritten notation which was on the agreement when Concheck signed it. Defendant contends that the Letter Agreement, by operation of its integration clause, therefore superseded any oral agreement, and is applicable to Plaintiff's claims. Defendant further argues that this is the "law of the case" in light of the prior order of the Ohio District Court. Defendant further asserts that Plaintiff cannot prevail because it has no basis for recovery under the oral agreement and had not pled claims based upon the Letter Agreement.[4]

---

[4] In light of Plaintiff's admission that the terms of the oral agreement and the Letter Agreement were the same, Defendant also argues that it is entitled to judgment

6

In its response to the motion for summary judgment, Plaintiff first asserts that it is entitled to commissions under the terms of the oral agreement. Plaintiff questions whether the handwritten notation altering the effective date was on the agreement when Concheck signed it, and contends that by its terms, the Letter Agreement was not effective until Plaintiff signed it on April 4, 2006.

Thirty days after the filing of Defendant's summary judgment motion, Plaintiff moved to amend its complaint to plead an alternate basis for recovery under the written Letter Agreement. The Court denied that motion (Doc. No. 151), in part because Plaintiff failed to show good cause for its delay in seeking to amend. Plaintiff also has advanced additional arguments premised upon the Letter Agreement, but in light of the Court's denial of its request to amend the complaint, these arguments will not be addressed.

## DISCUSSION

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." To be 'material,' a factual issue must potentially "'affect the outcome of the suit under the governing law.'" *Depositors Ins. Co. v. Wal-Mart Stores, Inc.,* 506 F.3d 1092, 1094 (8th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Mere allegations not supported with specific facts are insufficient to establish a material issue

---

because Plaintiff did not obtain the written authorizations required, and that with respect the clients who signed the necessary authorizations after Plaintiff filed suit, Plaintiff has been paid in full.

of fact and will not withstand a summary judgment motion.'" *Id*. at 1096 n. 3 (quoting *Henthorn v. Capitol Commc'n, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004)). The moving party bears the burden of showing the absence of a genuine issue of material fact. *Anderson,* 477 U.S. at 256.

In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007). In addition, the court "must not weigh evidence or make credibility determinations." *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003) (citing *Anderson*, 477 U.S. at 255).

When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

In support of its position that the Letter Agreement became effective on January 1, 2004, Defendant offers Kiefer's deposition testimony stating that he placed the handwritten notation on the Letter Agreement before sending it to Plaintiff for signature. The burden then shifts to Plaintiff to refute this inference and to show that there is a

genuine issue of fact regarding the presence of the handwritten notation on the copy of the Letter Agreement Concheck signed.  In response, Plaintiff acknowledges -- consistent with the deposition testimony -- that Concheck "does not know" whether the notation appeared on the copy of the Letter Agreement he signed.  This statement, essentially the absence of evidence, is, without more, insufficient to create a genuine issue of material fact regarding the effective date of the Letter Agreement.  *Celotex,* 477 U.S. at 325; *Neighborhood Enterprises, Inc. v. City of St. Louis*, 644 F. 3d 728, 734 (8th Cir. 2011) (noting that "[a]n issue of fact cannot result from a mere denials or conclusory allegations in the pleadings but must be based on specific factual allegations") (quotations omitted); *Fireman's Ins. Co. of Newark, N. J. v. Dufresne*, 676 F.2d 965, 969 (3d Cir. 1982) (holding that a party's denial of knowledge of facts, without an offering of evidence to call into question the summary judgment movant's affidavits is not sufficient to create a material issue of fact).

Plaintiff points to Sturm's deposition testimony as creating an issue of material fact that the handwritten notation did not appear on the copy of the Letter Agreement signed by Concheck.  A review of the entire deposition, however, makes plain that Sturm has no personal knowledge regarding when the Letter Agreement was signed by the parties and when the effective date notation was placed in the document.  Indeed, during the deposition, Sturm amended the very statement that Plaintiff now contends supports its position, and subsequently corrected the deposition transcript to remove that statement.  Therefore, Sturm's testimony also fails to create a genuine issue of material fact.  *See*

9

*Putman v. Unity Health System* 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.,* 62 F.3d 237, 241 (8th Cir. 1995) (holding that to survive a motion for summary judgment, the nonmoving party must "substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy").  Although Plaintiff has not questioned Kiefer's credibility on this point, the Court notes that the fact that the January1, 2004, effective date notation was included on the Letter Agreement when signed by Kiefer and sent to Plaintiff is fully corroborated by Defendant's business records.  It is also corroborated by the fact that Plaintiff cannot produce a copy of the Letter Agreement signed by Concheck that does not bear the handwritten notation altering the effective date.

 Plaintiff has not suggested any basis to nullify the handwritten notation and its legal effect, and the Court is not aware of any such basis.  The contract is a commercial agreement between two corporate entities, the handwritten notation is both prominent and legible, and it appears just below Kiefer's signature at the end of the page, immediately before Plaintiff's signature at the top of the next page.  Finally, Plaintiff does not and cannot assert that Concheck, its President, did not read the Letter Agreement, as he made a different handwritten change to the Letter Agreement.

 Based on the foregoing, the Court concludes that Plaintiff is unable to show that there is a genuine issue of material fact with respect to whether the handwritten notation appeared on the copy of the Letter Agreement when signed by the Plaintiff.  In the

absence of such a dispute, the handwritten notation will prevail over the contrary typed terms of the Letter Agreement regarding the effective date.[5] *See Trinity Products, Inc. v. Burgess Steel, LLC,* No. 4:03CV01808 HEA, 2006 WL 903240, at *3 (E.D. Mo. Apr. 7, 2006) (under Missouri law the rule is clearly established that where printed portions of a contract conflict with handwritten provisions the latter prevail) (quoting *Century 21-Andrews's Realty, Inc. v. Adams,* 691 S.W.2d 511, 512 (Mo. Ct. App. 1985)). Therefore, the Letter Agreement became effective on January 1, 2004, and supersedes any oral agreements between the parties. Plaintiff elected in his pleadings and throughout the course of the litigation to assert a claim based solely on the parties' oral agreement.[6] As the Court finds that the oral agreement was superseded by a written agreement, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's claims based on breach of the alleged oral contract. *Hutchens v. Burrell, Inc.,* 342 S.W.3d 399, 403 (Mo. Ct. App. 2011) (holding that a party may recover, if at all, only on the contract it pled).

---

[5] If, as Plaintiff has asserted, Ohio, rather than Missouri, law governs the interpretation of the Letter Agreement, the same rule applies. *Botzum Bros. Co. v. Brown Lumber Co.*, 104 Ohio App. 507, 509 (9 Dist. 1957) (holding that handwritten provisions will control even where they are inconsistent with the printed portion of the contract).

[6] Notwithstanding the Ohio District Court's Order of May 17, 2010, opining that the Letter Agreement became effective January 1, 2004 superseding oral agreement, Plaintiff continued to base its contract claim on the parties' oral agreement. As noted in this Court's order denying the motion to amend, Concheck stated at least twenty-five times in his deposition that he was proceeding under the oral agreement. Plaintiff's belated attempt, after the filing of Defendant's motion for summary judgment, to amend the complaint was rejected by this Court.

In its opposition to the motion for summary judgment, Plaintiff concedes that if the there is a valid contract applicable to the issues for which damages are sought, then its claims of unjust enrichment and promissory estoppel are precluded. Having determined that the Letter Agreement is applicable to Plaintiff's claims for commissions, the Court further concludes that Defendant is entitled to judgment on the claims for unjust enrichment and promissory estoppel. *Al-Khaldiya Elec. & Elec. Co., W.L.L. v. Boeing Co.*, 571 F. 3d 754, 759 (8th Cir. 2009) (applying Missouri law and holding that "[e]xpress terms of an unambiguous agreement preclude quantum meruit and unjust enrichment claims").

Inasmuch as the claims between Plaintiff and Defendant are resolved by this Memorandum and Order, the Third-Party Defendant's motion to sever is denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's Complaint (Doc. No. 93) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Motion of Third Party Defendant to Sever (Doc. No. 77) is **DENIED** as moot.

A separate order of judgment shall accompany this Memorandum.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of December, 2011.