UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL BENEFIT PROGRAMS, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV00907 AGF |
| | ) | |
| EXPRESS SCRIPTS, INC., | ) | |
| | ) | |
| Defendant/ | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE REYNOLDS & REYNOLDS CO., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff National Benefit Programs, Inc., brought this action for breach of contract, unjust enrichment, and promissory estoppel to recover commissions allegedly owed it by Defendant Express Scripts, Inc. ("ESI"). The Court having granted summary judgment to ESI on each of Plaintiff's claims (Doc. No. 153), only ESI's third-party claim for contractual indemnity against Third-Party Defendant, The Reynolds and Reynolds Company ("Reynolds") remains. Now before the Court are Reynolds' Motion for Summary Judgment (Doc. No. 87) and ESI's Motion for Summary Judgment on ESI's Third-Party Claim (Doc. No. 90). For the reasons set forth below, the Court will grant ESI's motion for summary judgment and deny Reynolds' motion for summary judgment.

## BACKGROUND

The record before the Court establishes the following. In late 2003, Plaintiff and

ESI entered into an oral agreement pursuant to which Plaintiff agreed to assist ESI in

identifying, retaining, and maintaining corporate clients for ESI's prescription drug

benefit programs. Plaintiff alleged that in exchange for these services, ESI agreed to set

aside a portion of the fees received from these clients and to pay Plaintiff commissions

from these funds.

Beginning in early 2004, Plaintiff retained nine client companies, including

Reynolds, on ESI's behalf. Throughout 2004 and 2005, ESI set aside, but did not pay to

Plaintiff, commissions allegedly due with respect to these clients. ESI withheld payment

because Plaintiff had not obtained the written client authorizations that ESI asserted were

required under their agreement.

In April 2006, Plaintiff and ESI executed a written agreement (the "Letter

Agreement") setting forth the terms of their business arrangement. Joseph Concheck,

Plaintiff's President, signed the agreement on Plaintiff's behalf. Plaintiff alleged in its

complaint that the terms of the 2003 oral agreement and the April 2006 written

Agreement were the same. (Compl., Doc. No. 2 at ¶13.)

One of the disputes between Plaintiff and ESI in this suit has been whether the

Letter Agreement became effective January 1, 2004, by virtue of a hand written notation

placed on the document by ESI's representative. In its ruling on ESI's motion for

summary judgment, the Court determined that the Letter Agreement had an effective date

of January 1, 2004, and therefore applied to the dealings between Plaintiff and ESI for the time period relevant to this lawsuit. (Doc. No. 153.)

The Letter Agreement included an integration clause providing that it "contain[ed] the entire agreement between the parties regarding the subject matter hereof." (Doc. No.15-1 at 8, ¶13.) In addition, it obligated ESI to pay commissions to Plaintiff if one of two conditions was met. *Id*. at 5, ¶2. Commissions would be payable if a client had entered into an agreement with ESI ("a client agreement") disclosing the fact that commissions would be accrued on the account and authorizing payment of the commissions to Plaintiff. *Id.* Alternatively, commissions would be payable if Plaintiff obtained from the client and submitted to ESI, a separate broker record or agreement disclosing the commissions and authorizing their payment. *Id.*

In July 2006, Plaintiff requested that ESI release to it all commissions accrued for the period of January 1, 2004, through April 4, 2006, including those attributable to Reynolds. (Doc. No. 131-2 at 2.) ESI refused to release the commissions, asserting that proper documentation in the form of a signed broker of record or client agreement was required for the release of commissions. *Id.*

During the same time period, in the summer of 2006, Don Bell, Reynolds' Director of Compensation and Benefits, received an anonymous phone call informing him that Plaintiff was receiving commissions from ESI on the basis of Reynolds' client agreement with ESI. (Doc. No. 92-1, Ex. 2 (Bell Depo.) at 89:14-93:3.) Bell contacted Josh Sturm, an account manager for ESI, and asked Sturm to confirm whether ESI had withheld commissions on the Reynolds account and if so, to provide an accounting of the

funds withheld. *Id*. at 117:10-23. Sturm informed Bell that ESI had set aside

$247,598.25 in commissions. *Id*. at 95:18-24. Reynolds then informed ESI that it had

neither received notice of, nor authorized payment of, commissions to Plaintiff.

In a September 14, 2006 letter to ESI, Plaintiff took the position that it was not

required to provide notice or written authorization to clients in order to receive

commission payments, and proposed a settlement of the dispute over the accrued

commissions, including those attributable to the Reynolds account. (Doc. No. 131-3 at

2.) Although Concheck testified that there was no written agreement for the period

January 1, 2004, to July 28, 2006, providing authorization or consent from Reynolds to

pay Plaintiff commissions, Plaintiff took the position that Section 6.3 of the client

agreement between ESI and Reynolds (Doc. No. 89-1) provided the required

authorization and consent. (Doc. No. 89-3 (Concheck Depo.) At 76:19-77:12.)

On September 29, 2006, Bell sent an email to Sturm requesting that ESI

immediately release all funds it had collected on behalf of "National Benefit Programs or

Joe Concheck" associated with the Reynolds account. (Doc. No. 92-1, Ex.2 at 149:2-

150:10.) On October 3, 2006, with the question of whether the $247,598.25 should be

paid to Reynolds or to Plaintiff remaining unresolved, ESI sent Reynolds a letter ("the

Indemnification Agreement") which provided in pertinent part:

> This is to confirm that Reynolds has directed Express Scripts to
> reimburse Reynolds a total of $247,598.25 representing amounts we
> initially thought were to be accrued for commissions for Joe
> Concheck/National Benefit Programs from January 1, 2004 to July
> 28th[sic], 2006. . . . By signature below Reynolds hereby agrees that in
> consideration of the reimbursement of the $247,598.25, it releases Express
> Scripts for any liability or responsibility in connection with the repaid

commissions. Further, Reynolds will indemnify, defend and hold Express
Scripts harmless in the event of dispute with Mr. Concheck and/or National
Benefit Programs.

Express Scripts will return the $247,598.25 promptly upon receipt of
a copy of this letter signed by an appropriate officer of Reynolds.

(Doc. No. 89-2.)

Bell signed the Indemnification Agreement as submitted, without changes or

deletions, on behalf of Reynolds and returned it to ESI. *Id.* at 151:9-152:15. On October

6, 2006, ESI issued a check in the amount of $247,698.25 payable to Reynolds, and

Reynolds deposited the check on October 24, 2006. *Id*. at 157:4-19. Thereafter, on

October 27, 2006, ESI responded to Plaintiff's proposal to settle the dispute over the

accrued commissions by reiterating its position that proper documentation in the form of

a signed broker of record or client agreement was required for the release of

commissions. (Doc. No. 89-10.)

Plaintiff filed this suit in December 2009, and on February 2, 2010, ESI notified

Reynolds in writing of Plaintiff's complaint in this lawsuit and demanded that Reynolds

indemnify, defend, and hold it harmless with respect to Plaintiff's claims. (Doc. No. 89-

12.) To date, Reynolds has refused to do so. In August 2010, ESI obtained leave to file

its third-party complaint for indemnification.

## DISCUSSION

### Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary

judgment shall be entered "if the movant shows that there is no genuine dispute as to any

material fact and that the movant is entitled to judgment as a matter of law."  To be

'material,' a factual issue must potentially "'affect the outcome of the suit under the

governing law."'  *Depositors Ins. Co. v. Wal-Mart Stores, Inc.,* 506 F.3d 1092, 1094 (8th

Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "'Mere

allegations not supported with specific facts are insufficient to establish a material issue

of fact and will not withstand a summary judgment motion."'  *Id*. at 1096 n.3 (quoting

*Henthorn v. Capitol Commc'n, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004)).  The moving

party bears the burden of showing the absence of a genuine issue of material fact.

*Anderson,* 477 U.S. at 256.

In ruling on a motion for summary judgment, a court is required to view the facts

in the light most favorable to the non-moving party and must give that party the benefit of

all reasonable inferences to be drawn from the record.  *Sokol & Assocs., Inc. v. Techsonic*

*Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007).  In addition, the court "must not weigh

evidence or make credibility determinations."  *Kenney v. Swift Transp., Inc.*, 347 F.3d

1041, 1044 (8th Cir. 2003) (citing *Anderson*, 477 U.S. at 255).

When a motion for summary judgment is made and properly supported by

evidence, the non-moving party may not rest on the allegations of its pleadings but must

set forth specific facts, by affidavit or other evidence, showing that there is "a genuine

issue for trial."  Fed. R. Civ. P. 56(e).  "Where the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

trial.'"  *Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(quoting Fed. R. Civ. P. 56(e)).

**The Cross Motions for Summary Judgment**

Reynolds moves for summary judgment on the indemnity claim, asserting that the Indemnification Agreement is not enforceable because it is not supported by consideration. Specifically, Reynolds contends that there was no consideration offered for the alleged obligation to indemnify, because ESI, lacking the authority to withhold the commissions in the first place, was merely fulfilling a pre-existing legal obligation when it paid the funds over to Reynolds.

In its cross motion for summary judgment on the issue of liability, ESI asserts that the language of the Indemnification Agreement creates a presumption of sufficient consideration. ESI next asserts that Reynolds's attempt to rebut this presumption fails because the funds paid under the Indemnification Agreement were not a "repayment," but were paid in resolution of the dispute between Reynolds and Plaintiff over the accrued funds. Therefore, ESI further contends that Reynolds' promise to indemnify it arose out of the resolution of that dispute, not the fulfillment of a pre-existing legal obligation.

Under Missouri law, the essential elements of a contract are (1) competency of the parties to contract, (2) subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Krusen v. Maverick Transp.,* 208 S.W.3d 339, 342 (Mo. Ct. App. 2006); *Hyatt v. Trans World Airlines, Inc.*, 943 S.W.2d 292, 296 (Mo. Ct. App. 1997). A valid contract must include an offer, an acceptance, and consideration. *U.S. Bank v. Lewis,* 326 S.W.3d 491, 495 (Mo. Ct. App. 2010).

A commitment undertaken in compromise of a disputed claim will constitute sufficient consideration to support a contract. *Smart Cemetery v. Bell Holdings, LLC*,

186 S.W.3d 423, 427 (Mo. Ct. App. 2006).  However, a promise to do that which one is

already legally obligated to do cannot serve as consideration.  *Zipper v. Health Midwest*,

978 S.W. 2d 398, 416-17 (Mo. Ct. App. 1998) (holding that hospital bylaws adopted to

comply with state regulatory requirements did not give rise to a contract with physicians

because hospital's pre-existing legal duty to adopt the bylaws could not serve as

consideration).

The recitation of consideration in an agreement is prima facie evidence of

consideration sufficient to support a contract.  *Hammons v. Ehney,* 924 S.W.2d 843, 850

(Mo. 1996).  In addition, "all written promises to pay another a specific sum of money,

signed by the promisor, import a consideration."  *Id*. at 850.  In either situation, "a

presumption is created that consideration exists, which must be overcome by evidence to

the contrary."  *Id*.  Therefore, if a contract explicitly states the basis for the consideration

offered, a party opposing the sufficiency of that consideration may avoid summary

judgment only by rebutting such evidence.  *See Id*.

In support of its motion, ESI offers the Indemnification Agreement, executed by

ESI, the promisor, which includes an express recitation that it agrees to pay $247,598.25

in consideration for Reynolds' promise to release it from "liability or responsibility" in

connection with the commissions.  This, without more, gives rise to a presumption that

the promise to indemnify was supported by sufficient consideration and is thus

enforceable.  *Hammons,* 924 S.W.2d at 850.  In addition, ESI points to uncontroverted

deposition testimony from Bell and Concheck and supporting letters and emails

indicating that each was seeking to recover the $247,598.25 in commissions from ESI in

the time period just prior to Bell's signing of the Indemnification Agreement on behalf of Reynolds.

To overcome the legal presumption of consideration arising from the plain language of the Indemnification Agreement, Reynolds must demonstrate that ESI's decision to release the funds to Reynolds was an admission that it had improperly withheld the commissions and was legally obligated to repay them to Reynolds, or a determination that the commissions would in no event be payable to Plaintiff. *See Zipper*, 978 S.W. 2d at 416-17.

In an attempt to overcome the presumption, Reynolds contends that ESI lacked authority to withhold the commissions. This contention is immaterial, however, because Reynolds concedes that on October 3, 2006, that matter had not been conclusively determined and the accrued funds were the subject of a dispute. *See Smart Cemetery*, 186 S.W.3d at 427. The record establishes that as of that date, Plaintiff had asked ESI to pay it the accrued commissions, had rejected ESI's basis for refusing to do so, and had suggested a compromise or settlement of the issue. In addition, the Indemnification Agreement specifically refers to a dispute with "Concheck/National Benefit Programs" and not to an unidentified, hypothetical disagreement. From a review of the record, it is clear that a bonafide dispute as to liability existed between Plaintiff and ESI at the time suit was filed.[1] Therefore, the Court concludes that the exchange of funds was not a

---

[1]    The Court also notes that after Plaintiff filed suit, ESI presented written broker agreements to the nine clients and four of the nine signed the agreement authorizing the payment of the accrued commissions to Plaintiff.

repayment, but was made in resolution of the dispute, and constitutes sufficient

consideration for the promise to "indemnify, defend and hold harmless." *See id.* The

Court finds that Reynolds has not adduced facts in support of, or provided a legal basis

for, its assertion that the indemnification obligation is unenforceable. *See Wilson*, 777

S.W.2d at 314.

Moreover, the Indemnification Agreement was the result of arms-length,

commercial dealings between two substantial corporate entities. The record reflects no

efforts by Reynolds to amend the indemnification language in the document. It cannot

now avoid an obligation so unambiguously set forth in the agreement. Reynolds accepted

the benefit of receiving the contested funds before the resolution of the dispute and is

now estopped to selectively question the validity of certain terms of the agreement from

which the benefit derived. *See Wilson v. Midstate Indus., Inc.*, 777 S.W.2d 310, 314

(Mo. Ct. App. 1989) (citing *Long v. Huffman*, 557 S.W.2d 911, 915 (Mo. Ct. App.1977))

(holding that a buyer, having received the benefits of noncompetition and labor of a

seller, was estopped to question, on the basis of an alleged pre-existing duty of faithful

service, the existence of an agreement to compensate the seller for noncompetition).

On the basis of the foregoing, the Court concludes that the Indemnification

Agreement contained an unambiguous and enforceable promise on the part of Reynolds

to indemnify ESI in the event of a subsequent dispute between ESI and Plaintiff regarding

the $247,598.25 Reynolds received at that time. Therefore, ESI's motion for summary

judgment will be granted with respect to liability on the third-party claim for

indemnification.  The question of damages[2] remains.  The parties are directed to confer and to advise the Court whether they wish to proceed with a jury trial on the issue of damages or to submit the issue to the Court for determination on affidavits and briefs.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Express Scripts, Inc.'s motion for summary judgment on the Third-Party Complaint (Doc. No. 90) is **GRANTED,** with respect to liability.

**IT IS FURTHER ORDERED** that Third-Party Defendant Reynolds and Reynolds Co.'s motion for summary judgment on the Third-Party Complaint (Doc. No. 87) is **DENIED**.

**IT IS FURTHER ORDERED** that ESI and Reynolds shall confer and advise the Court no later than **Friday, January 13, 2012**, whether they wish to proceed to trial on January 30, 2012, on the issue of damages or to submit the issue to the Court for determination.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 5th day of January, 2012.

---

[2]    ESI has conceded that Reynolds' obligation should extend only to the portion of such defense attributable to Reynolds and not to the eight other clients whose accrued commissions also were the subject of Plaintiff's complaint.